[No. B208440. Second Dist., Div. Four. Apr. 23, 2010.]

DAVID B. LOCKTON, Plaintiff and Appellant, v.
MICHAEL O'ROURKE et al., Defendants and Respondents.

[No. B212435. Second Dist., Div. Four. Apr. 23, 2010.]

DAVID B. LOCKTON, Plaintiff and Respondent, v.
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, et al.,
Defendants and Appellants.

COUNSEL

Stephen W. Steelman for Plaintiff and Appellant and for Plaintiff and Respondent.

Quinn Emanuel Urquhart Oliver & Hedges, Eric J. Emanuel and Roxanna A. Manuel for Defendants and Appellants.

Hinshaw & Culbertson, Daniel Sanchez-Behar and John W. Sheller for Defendants and Respondents Michael O'Rourke and O'Rourke McCloskey & Moody.

Quinn Emanuel Urquhart Oliver & Hedges, Roxanna A. Manuel; Greines, Martin, Stein & Richland, Robin Meadow and Kent J. Bullard for Defendants and Respondents Quinn Emanuel Urquhart Oliver & Hedges and Richard A. Schirtzer.

---

OPINION

**EPSTEIN, P. J.**—David B. Lockton appeals from a judgment of dismissal entered after demurrers by defendants and respondents Quinn Emanuel Urquhart Oliver & Hedges, LLP, and Richard A. Schirtzer and Michael O'Rourke and O'Rourke, McCloskey & Moody (collectively respondents) to the fifth amended complaint for legal malpractice. The demurrers were sustained without leave to amend on the ground the action was barred by the statute of limitations. He claims the trial court improperly based its ruling on facts that do not appear on the face of the fifth amended complaint and that the ruling was contrary to the purposes underlying the continuous representation tolling rule.

The trial court's ruling was based on facts alleged in previous verified versions of Lockton's complaint. This was proper under established pleading doctrine. The allegations of the fifth amended complaint were sufficient to establish that respondents represented Lockton's interests in the subject matter of this malpractice action only until new counsel was retained to pursue those claims in a separate state court action. Since Lockton learned that his underlying state court claims were barred more than one year before he filed this action, the trial court did not err in sustaining the demurrers without leave to amend on that ground. This result is not contrary to the purposes underlying the continuous representation tolling rule.

Quinn Emanuel Urquhart Oliver & Hedges, LLP (Quinn Emanuel), and Richard Schirtzer of that firm, both respondents, cross-appeal to challenge the

trial court's denial of their requests for attorney fees. We conclude that the trial court erred in ruling that Schirtzer and Quinn Emmanuel were not entitled to fees. We reverse that order and remand to the trial court for a determination of the amount of fees to be awarded.

## FACTUAL AND PROCEDURAL SUMMARY

Since this is an appeal from judgment entered after the trial court sustained the defendants' demurrers without leave to amend, we "accept as true all well-pleaded facts in the complaint and give a reasonable construction to the complaint as a whole." (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 140, fn. 1 [72 Cal.Rptr.3d 553], citing *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) In addition, we may consider matters which are properly the subject of judicial notice. (*Buesa v. City of Los Angeles* (2009) 177 Cal.App.4th 1537, 1543 [100 Cal.Rptr.3d 86].) In conformity with these principles, we take our factual summary from the charging pleading, the fifth amended complaint, and the exhibits incorporated by reference in that pleading. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 [104 Cal.Rptr.2d 239].)

### A. *Interactive Network, Inc.*

Lockton is an attorney and entrepreneur with a record of successful business ventures. In 1987, he founded Interactive Network, Inc. (Interactive), to exploit his patent for a new technology "that allowed television viewers of sporting events and game-shows to compete with one another in games of skill while simultaneously interacting with the television programming where the event was taking place." Lockton was president, chief executive officer and a major shareholder in Interactive. Various media companies, including Tele-Communications, Inc. (TCI), invested in Interactive.[1] Interactive went public through an initial public offering in the fall of 1991. In May 1993, TCI became its largest single shareholder.

### B. *Underlying Litigation and Attorneys*

#### 1. *Interactive v. TCI*

In 1994, TCI began an attempted takeover of Interactive. In January 1995, Lockton and Interactive's board of directors retained the Morrison & Foerster law firm, including partners Marshall Small and Adam Lewis (collectively Morrison defendants), to represent Interactive's interests in remaining independent and thwarting TCI's takeover efforts. In July 1995, Lockton was

---

[1] TCI subsequently was acquired by AT&T Corporation.

directed by Interactive's board of directors to hire Joseph Cotchett and his firm to sue TCI in the Alameda County Superior Court. (*Interactive Network, Inc. v. Tele-Communications, Inc.*, case No. 754933-7 (hereafter TCI litigation).) That was done, and Lockton managed the TCI litigation on behalf of Interactive on a full-time basis. The case was settled in February 1998.

### 2. *Lockton Retains Bruce Prescott and Daniel O'Rourke*

In March 1998, Lockton retained Bruce Prescott of Trump, Alioto & Prescott to represent his interests and those of other Interactive equity shareholders in, among other matters, a chapter 11 bankruptcy proceeding filed in 1998 on behalf of Interactive by Morrison & Foerster. (Bankr. N.D.Cal., No. 98-340555.) He followed Prescott's advice and also hired Daniel O'Rourke, of Vedder, Price, Kaufman & Kammholz in Chicago, an attorney experienced in Securities and Exchange Commission matters. On March 14, 1999, Prescott wrote a detailed eight-page letter to Small and Lewis of Morrison & Foerster charging them with various acts of wrongdoing, including defamation. The letter warned that if the Morrison defendants did not settle, an action would be filed.

Lockton received a copy of the Prescott letter and was advised by Prescott and Daniel O'Rourke to retain counsel to commence separate litigation against TCI, members of Interactive's board of directors, and the Morrison defendants. Allegedly, Daniel O'Rourke felt so strongly about the wrongs perpetrated against Lockton by the Morrison defendants that he referred Lockton to his brother, Michael O'Rourke, as possible counsel to represent Lockton in an action against the Morrison defendants.

In June 1998, Lockton was removed from his positions as president and chief executive officer by the Interactive board of directors. He remained on the board until March 1999.

### 3. *Lockton Retains Michael O'Rourke and Richard Schirtzer*

Lockton first met with Michael O'Rourke of O'Rourke, McCloskey & Moody, and Richard Schirtzer of Quinn Emanuel, in July 1998.[2] He told both men at the initial meeting that "he saw the Morrison defendants as the prime defendants in the proposed lawsuit." Lockton acknowledges that O'Rourke and Schirtzer were reluctant to name Morrison & Foerster at that point. It was agreed that the complaint would be drafted as if "the Morrison & Foerster defendants were formally named, but to not specifically include them in the

---

[2] Quinn Emanuel was to serve as local counsel to O'Rourke, McCloskey & Moody, which is located in Illinois.

caption of the complaint, using instead the charging allegations in the body of the complaint combined with 'Doe' allegations to preserve the right to sue Morrison & [Foerster] . . . ."

Michael O'Rourke and his firm were retained in June 1999. Schirtzer and his firm were retained in August 1999. (We refer to these firms and individual defendants collectively as respondents.) Copies of the retainer agreements, which Lockton alleges were incomplete, were attached as exhibits to the fifth amended complaint. The retainer agreements listed entities and individuals against whom the firms would prosecute Lockton's claims, but did not include the Morrison defendants in this list.

In August 1999, Quinn Emanuel filed an action against AT&T Broadband,[3] Joseph Cotchett, and members of the Interactive board. This action originally was filed in the Los Angeles Superior Court, and was subsequently removed to the United States District Court for the Northern District of California. (*Lockton v. AT&T Broadband* (N.D.Cal., No. CV05462TEH).) (We adopt the practice of the parties in referring to this matter as the "federal action.") The federal action was actively litigated until resolved on August 20, 2003, when it was settled and dismissed.

### 4. *Lockton's State Court Claim Against Morrison & Foerster*

In June 2002, Lockton retained Attorney Guy Kornblum to sue the Morrison defendants in Santa Clara Superior Court (*Lockton v. Small* (2006, No. CV810963)). Lockton alleged that he did so because of O'Rourke's advice that he should retain separate counsel to sue the Morrison defendants in state court. The complaint alleged causes of action for libel per se, libel per quod, slander, and violations of the Labor Code based on statements made in 1998 and 1999 by the Morrison defendants to the Securities and Exchange Commission, in connection with the Interactive bankruptcy, and in press releases and shareholder reports. We refer to this as the Morrison & Foerster action. As we next discuss, this action was ultimately dismissed after the California Court of Appeal for the Sixth District held that the Morrison defendants' special motion to strike (Code Civ. Proc., § 425.16) should have been granted as to all causes of action. The basis of that ruling was the court's conclusion that Lockton could not demonstrate a probability of success on the merits since his claims were barred by the statute of limitations.

### C. *Present Action for Malpractice*

As we have noted, respondents in this action are Quinn Emanuel and Richard A. Schirtzer of that firm, and Michael O'Rourke and his firm,

---

[3] Successor to TCI.

O'Rourke, McCloskey & Moody. The present action for malpractice arises from respondents' failure to file a timely suit against the Morrison defendants on behalf of Lockton.

According to Lockton, he discovered a claim for malpractice against respondents on March 19, 2003, when the Santa Clara Superior Court granted a special anti-SLAPP (strategic lawsuit against public participation) motion to strike two of the causes of action in his Morrison & Foerster action on statute of limitations grounds. In an unpublished opinion, the Court of Appeal directed the trial court to grant the special motion to strike as to Lockton's four causes of action against the Morrison defendants because all of them were barred by the statute of limitations.

Lockton's present malpractice complaint against respondents, filed on April 23, 2004 in San Francisco Superior Court, is based on respondents' failure to preserve his claims against the Morrison defendants. A first amended complaint was filed in the same court in early May 2004. Neither the original nor first amended complaint was served. Nearly two years later, on March 15, 2006, Lockton filed a second amended complaint. This pleading substituted Michael O'Rourke as a defendant in place of Daniel O'Rourke. It was served on respondents. The Quinn Emanuel defendants successfully moved to transfer venue to Los Angeles County and the case was transferred in November 2006.

The trial court sustained respondents' demurrers to the second amended complaint with leave to amend. In March 2007, Lockton filed his third amended complaint. This was the first complaint to be verified. In response to demurrers by respondents, Lockton sought and received leave to file a verified fourth amended complaint.

Demurrers by respondents to the fourth amended complaint did not raise the statute of limitations as a defense. The trial court ordered briefing on that issue. The court noted that Lockton had not stated a cause of action for fraud, which might have extended the statute of limitations. After the parties briefed the statute of limitations, the trial court sustained the demurrers with leave to amend, but warned Lockton in a written ruling to address 12 enumerated obstacles regarding the statute of limitations in the next amended complaint.

Lockton's fifth amended complaint, the charging pleading, is unverified and alleges causes of action for constructive fraud, professional negligence, implied contract, and breach of fiduciary duty.

The trial court sustained respondents' demurrers to the fifth amended complaint without leave to amend on the ground Lockton's claims were

time-barred. It rejected Lockton's claim that the statute of limitations was tolled under Code of Civil Procedure section 340.6, subdivision (a)(2) in light of respondents' continued representation of him in the federal case. The court found that Lockton was "specifically told by the defendants that they would not bring suit against the Morrison defendants," that he should obtain new counsel for that purpose, and that he did so. The trial court concluded that Lockton was well aware of any potential wrongdoing by the respondents, any consequential injuries, and the limited scope of representation by March 19, 2003, when the Santa Clara court granted the Morrison defendants' anti-SLAPP motion to strike the Morrison & Foerster action on statute of limitations grounds.[4]

Lockton objected to entry of judgment and moved for reconsideration.[5] A judgment of dismissal with prejudice was entered and this timely appeal followed.

The Quinn Emanuel defendants moved for attorney fees under Civil Code section 1717. The motion was denied. These defendants filed a timely appeal from that order (case No. B212435).

We consolidated the appeals from the judgment of dismissal and from denial of attorney fees for purposes of oral argument and decision.

## DISCUSSION

### I

Lockton's first argument is that the trial court relied on facts that do not appear on the face of the fifth amended complaint in finding that respondents told Lockton they would not name the Morrison defendants in the federal action. This was a factor in the trial court's conclusion that the statute of limitations was not tolled under the continuing representation rule.

Lockton argues "[n]owhere on the face of the Complaint does it say that appellant was 'specifically told by the defendants that they would not bring suit against the Morrison Defendants,' " as the trial court stated in its order. In support of this argument, Lockton cites paragraph 70 of the fifth amended complaint, which alleges that immediately after the deposition of Marshall Small in the federal action, Lockton asked Michael O'Rourke to name the

---

[4] The correct date of that ruling was March 14, 2003, but the fifth amended complaint alleges the date as March 19, 2003.

[5] The record does not contain a reporter's transcript of a hearing on the motion for reconsideration and no ruling on that motion is in the clerk's transcript.

Morrison defendants in the federal case. He alleges: "O'Rourke responded by saying, 'Oh, Dave, you don't want to do that; It would anger the Judge to bring them in so late in the proceedings. Why don't you file a state court claim. The statute of limitations in the state court action is protected by the discovery rule. You just discovered the facts giving rise to the cause of action today,' or words to that effect."

This account of Lockton's conversation with Michael O'Rourke differs from the account alleged in the verified third and fourth amended complaints. We underscore the differences in the third amended complaint. Lockton alleged that O'Rourke said: " 'Oh we don't want to do that now, at this late date it will anger the judge. You have a great suit and you should just get another attorney and sue them in state court,' or words to that effect." (Underscoring added.) The third amended complaint does not allege that O'Rourke addressed the statute of limitations in his comments to Lockton.

Similarly, in the verified fourth amended complaint, Lockton repeats the statement attributed to O'Rourke in the third amended complaint and adds: "[A]nd, further, that since he had just discovered the deliberate tortious actions of the Morrison defendants, the statute of limitations would be 'tolled' until such discovery."

■ "Under the sham-pleading doctrine, admissions in an original complaint that has been superseded by an amended pleading remain within the court's cognizance and the alteration of such statements by amendment designed to conceal fundamental vulnerabilities in a plaintiff's case will not be accepted. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425–426, fn. 3 [42 Cal.Rptr.3d 807] [If a party files an amended pleading and attempts to avoid defects of original complaint by either omitting facts that rendered prior complaint defective or adding facts inconsistent with prior allegations, court may take judicial notice of prior pleadings and disregard inconsistent allegations or read into amended complaint the allegations of the superseded complaint.]; *Patane v. Kiddoo* (1985) 167 Cal.App.3d 1207, 1213 [214 Cal.Rptr. 9].)" (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1043, fn. 25 [100 Cal.Rptr.3d 875].)

The trial court properly took into account the earlier, and verified, versions of the conversation between Lockton and O'Rourke alleged in the third and fourth amended complaints. Lockton could not avoid them by changing the account alleged in the fifth amended complaint. The significance of the allegation that O'Rourke told Lockton "we" would not name the Morrison defendants and that Locton should get another attorney and sue in state court, is addressed in the next portion of our discussion.

## II

Lockton argues the trial court erred in concluding that the statute of limitations was not tolled by the continuous representation rule codified in Code of Civil Procedure section 340.6, subdivision (a)(2).

The statute of limitations for an action other than actual fraud against an attorney arising out of the performance of professional services must be commenced "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (Code Civ. Proc., § 340.6, subd. (a).) Subdivision (a)(2) of section 340.6 provides that the period is tolled if "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."

■ "The continuous relationship tolling provision applies only so long as representation continues '*regarding the specific subject matter in which the alleged wrongful act or omission occurred.*' " (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 514, fn. 8 [66 Cal.Rptr.3d 52, 167 P.3d 666], italics added.) In *Beal Bank*, the Supreme Court explained: "Once representation on that matter ends, a client must bring timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship in all other such matters. Had the Legislature intended preservation of the attorney-client relationship as a dispositive trump card, it would not have so limited the scope of the tolling exception." (*Ibid.*)

The resolution of this issue turns on whether respondents represented Lockton on the specific subject matter in which the alleged wrongful act or omission occurred, and if so, whether the statute of limitations was tolled for a sufficient time to make the complaint timely. Lockton argues they did, citing their representation of him in the federal action. Respondents argue that they did not represent Lockton in his claim against the Morrison defendants. Alternatively, they argue that any continuous representation regarding Lockton's claims against the Morrison defendants ended when Lockton hired Attorney Kornblum to file the Morrison & Foerster action.

■ California courts have recognized that Code of Civil Procedure section 340.6 "does not expressly state a standard to determine when an attorney's representation of a client regarding a specific subject matter continues or when the representation ends . . . ." (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 28 [43 Cal.Rptr.3d 866] (*Gonzalez*), citing *Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1498 [35 Cal.Rptr.2d 169] (*Worthington*); see *Lockley v.*

*Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 887 [110 Cal.Rptr.2d 877].) The legislative history provides no guidance on this issue. (*Gonzalez*, at p. 28, citing *Worthington*, at p. 1498; *Lockley*, at p. 887.) Despite the lack of statutory guidance, courts have articulated helpful principles, which we apply.

"The test for whether the attorney has continued to represent a client on the same specific subject matter is objective, and ordinarily the representation is on the same specific subject matter until the agreed tasks have been completed or events inherent in the representation have occurred." (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1528 [80 Cal.Rptr.2d 94] (*Crouse*).) In cases where the attorney unilaterally withdraws or abandons the client, "the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services." (*Gonzalez, supra*, 140 Cal.App.4th at p. 30.) The *Gonzalez* court explained that this may occur "upon the attorney's express notification to the client that the attorney will perform no further services, or, if the attorney remains silent, may be inferred from the circumstances." (*Id.* at pp. 30–31.) It concluded: "After a client has no reasonable expectation that the attorney will provide further legal services, however, the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end." (*Id.* at p. 31.)

Respondents cite *Gonzalez, supra*, 140 Cal.App.4th 21, and argue that Lockton could have had no reasonable expectation that they would continue to represent him on his claims against the Morrison defendants after O'Rourke told him they did not want to add the Morrison defendants to the federal case, and that he should retain other counsel to bring a separate state court action. At the latest, they argue, their representation of Lockton on the Morrison claims ended when he retained other counsel and instituted the separate state Morrison & Foerster action to pursue those claims. In *Gonzalez*, unlike our case, the defendant attorney never informed the client that he would not continue to prosecute her case, and therefore there was a triable issue of material fact as to whether the client could reasonably believe the attorney was continuing to represent her. (*Id.* at p. 32.) Respondents argue Lockton could have no such reasonable belief after retaining Kornblum to bring the state court action against the Morrison defendants in September 2002. If they are correct and the tolling period ended at that time, Lockton's complaint, filed in April 2004, was untimely.

Lockton counters that respondents continued their active representation of him in the federal action, in which the complaint alleged wrongdoing by the Morrison defendants—the same subject matter as the malpractice

claim against them. The mere existence of an attorney-client relationship does not trigger the continuous representation rule: "Instead, the statute's tolling language addresses a particular phase of such a relationship—representation regarding a *specific subject matter*. Moreover, the limitations period is not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff. (*Von Rott* v. *Johnson* (1983) 148 Cal.App.3d 608, 609, 613 [196 Cal.Rptr. 55]; but see *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328, 333 [187 Cal.Rptr. 14] [attorney represents client so long as attorney assists client with unsettled matters incidental to case].) Therefore, '[t]he *inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated.*' (2 Mallen & Smith, Legal Malpractice [(3d ed. 1989)] Statutes of Limitations § 18.12, at p. 119, fn. omitted.)" (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 228–229 [31 Cal.Rptr.2d 525], italics added.) Tolling does not apply where there is a continuing relationship between the attorney and client "involving only unrelated matters." (*Crouse, supra*, 67 Cal.App.4th at p. 1528, citing *Foxborough v. Van Atta, supra*, 26 Cal.App.4th at pp. 228–229.)

In *Worthington, supra*, 29 Cal.App.4th 1488, a client became dissatisfied with her attorney's representation, and sought new counsel. After being notified that the client was changing counsel, the defendant attorney wrote a strategy letter to her about the matter, with no mention of the change of counsel. Subsequently, a substitution of attorney was filed. The Court of Appeal held triable issues of material fact regarding the continuing representation rule precluded summary judgment on the statute of limitations issue because the defendant attorney submitted a declaration denying any activity on behalf of the client when he learned of her plan to change attorneys. This evidence was controverted by the strategy letter.

██ The *Worthington* court held that representation is concluded when the parties agree to termination of the relationship and that formal termination, such as withdrawing as counsel of record, is not required. (*Worthington, supra*, 29 Cal.App.4th at p. 1497.) The court declined to follow the subjective approach used in *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837], and concluded that the same result in that case would have been reached under the better objective standard: "The attorney [in *Hensley*] ordered the client out of his office, the client believed the relationship was over, and a new attorney was retained within three days. *These objective criteria establish the mutual termination of the attorney-client relationship*." (*Worthington, supra*, 29 Cal.4th at p. 1497, italics added.)

In *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort, supra*, 91 Cal.App.4th 875, the court characterized the general rule as "that the

attorney's representation does not end 'until the agreed tasks or events have occurred, the client consents to termination or a court grants an application by counsel for withdrawal.' " (*Id.* at pp. 887–888, quoting 2 Mallen & Smith, Legal Malpractice, *supra*, Statute of Limitations, § 18.12, p. 120.)

With these principles in mind, we turn to the allegations of the fifth amended complaint relevant to the statute of limitations issue.

Lockton filed the present malpractice complaint on April 23, 2004. Under Code of Civil Procedure section 340.6, subdivision (a), his action is time-barred if the statute of limitations began running before April 23, 2003.[6] The allegations in the federal complaint make it clear that Lockton was aware of the basis for an action against the Morrison defendants by August 1999, when that action was filed with multiple allegations of wrongdoing by the Morrison defendants. When the Santa Clara Superior Court struck Lockton's two libel causes of action against the Morrison defendants in the Morrison & Foerster action on the ground that they were barred by the statute of limitations, Lockton was put on notice that the statute of limitations against the Morrison defendants had run. This was on March 14, 2003.

Therefore, on March 14, 2003, Lockton's cause of action for malpractice against respondents accrued and the statute of limitations as to these respondents began to run. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751 [76 Cal.Rptr.2d 749, 958 P.2d 1062] ["Under section 340.6, the one-year limitations period commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission, but the period is tolled until the plaintiff sustains actual injury."].) This was more than a year and one month before Lockton filed this present action against respondents. His action is barred unless the continuous representation tolling rule he invokes applies.

The first issue raised by that rule is whether respondents represented Lockton on his claims against the Morrison defendants by representing him in the federal action. Respondents argue that their retainer agreements with Lockton did not obligate them to pursue any claims against the Morrison defendants. The retainers describe the nature of the engagement as representing Lockton concerning his claims against Cotchett and directors of Interactive and TCI arising out of their use of the settlement of the Alameda County litigation to gain control of Interactive and its patent and to force Lockton out without proper compensation. Claims against Morrison & Foerster, Small, or Lewis are not mentioned.

---

[6] The actual fraud exception to the one-year statute of limitations under Code of Civil Procedure section 340.6, subdivision (a) does not apply to causes of action for constructive fraud. (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 69 [72 Cal.Rptr.2d 359].) Lockton alleges only a cause of action for constructive fraud, not actual fraud.

While the Morrison defendants were not named defendants in the federal action, there were multiple allegations of wrongdoing by those parties in the federal complaint. Under the section labeled "parties," both Small and Lewis are named. Paragraph 62 alleged that Lewis and Small "directly aided and abetted the other defendants regarding the disbursement of the settlement proceeds, the fraudulent treatment of [Interactive's] obligations to Lockton in the bankruptcy proceedings, the isolation of Lockton from the company, and the defendants' actions to defame, libel and discredit Lockton." Paragraphs 69 through 73 allege that Small and Lewis conspired with the other federal defendants to use the Interactive bankruptcy proceedings to interfere with Lockton's interests. The fifth federal cause of action for defamation is based on alleged wrongdoing by Small and Lewis.

In paragraph 24 of the fifth amended complaint in the present action, Lockton alleges that O'Rourke and Schirtzer proposed, and he agreed, that the federal complaint would be drafted as if "the Morrison & [Foerster] defendants were formally named, but to not specifically include them in the caption of the complaint, using instead the charging allegations in the body of the complaint combined with 'Doe' allegations to preserve the right to sue Morrison & [Foerster] . . . ." This course also would allow Morrison & Foerster to respond to a letter to be sent by O'Rourke and Schirtzer.

The allegations in the federal complaint, in conjunction with the agreement that respondents would preserve the right to sue the Morrison defendants in that action, are sufficient to establish that respondents represented Lockton on his claims against the Morrison defendants notwithstanding the limited language of their retainer agreements

But in December 2001, according to the allegations of the verified third and fourth amended complaints, respondents informed Lockton that they would not name the Morrison defendants in the federal action, that he should retain new counsel to pursue those claims, and that the action against the Morrison defendants should be filed in state court. Lockton alleges that he followed this advice, retained Kornblum, and, in September 2002, filed the Morrison & Foerster action for defamation in the Santa Clara Superior Court. The court in *Crouse, supra*, 67 Cal.App.4th at page 1528 held that representation is on the same specific subject matter until "the agreed tasks have been completed or events inherent in the representation have occurred." This test was satisfied when respondents told Lockton they would not sue the Morrison defendants in the federal action, followed by Lockton's retention of new counsel who filed the Morrison & Foerster action in state court. From that time until the settlement of the federal action, no claim against the Morrison defendants was pursued by respondents on behalf of Lockton.

As evidence of respondents' continuing representation, Lockton cites a letter written by O'Rourke to an attorney at Morrison & Foerster and an attorney at another firm on July 25, 2002, which states that based on the information gained in the depositions of Small and Lewis, Lockton had decided to sue the Morrison defendants. He states "we contemplate" moving to amend the pending federal case to include these claims. But the facts alleged in the fifth amended complaint do not demonstrate that respondents continued to represent Lockton with respect to his claims against the Morrison defendants after the Morrison & Foerster action was filed by Kornblum in September 2002. There are no factual allegations that respondents advised or consulted Kornblum or Lockton with respect to the Morrison & Foerster action between the retention of Kornblum and the trial court's order granting the anti-SLAPP motion as to two causes of action in that case in March 2003.

In *Foxborough v. Van Atta, supra,* 26 Cal.App.4th at page 228, the court held that the client's retention of a new attorney to pursue his claims arising from the subject matter in which the malpractice occurred was a factor in determining that the continuous representation rule did not toll the statute of limitations. In that case, the plaintiff claimed the attorney negligently failed to advise him he had to exercise a development right within three years, and the right expired. Plaintiff hired a new firm to sue a third party in an attempt to revive the development rights. The new law firm hired the former attorney to act as a consultant and expert witness in the litigation against the third party. The plaintiff lost the action against the third party and sued the former attorney. The Court of Appeal found that the former attorney's representation regarding the third party terminated when the plaintiff hired the new firm to represent him in an action against the third party and the new firm filed the action against the third party. The *Foxborough* court held that the former attorney's later role as consultant and expert witness for the new firm did not establish continued representation of the client. (*Id.* at p. 229; see also *Truong v. Glasser* (2009) 181 Cal.App.4th 102 [103 Cal.Rptr.3d 811] [representation ended when client hired new attorney to pursue claim and there was no evidence former attorney aided, consulted with, or advised either plaintiffs or their new attorney in connection with that litigation.].)

Lockton relies on *Nielsen v. Beck* (2007) 157 Cal.App.4th 1041 [69 Cal.Rptr.3d 435]. In that case, the defendant, Attorney Beck, represented plaintiffs in a number of matters, including a landlord-tenant case involving a commercial lease. As a result of Beck's advice, the plaintiffs stopped paying rent, which default triggered a lease clause making them liable as guarantors of the lease for "free rent" extended by the landlord. The plaintiffs lost an unlawful detainer action and a substantial judgment was entered against them. The plaintiffs and Beck then executed a substitution of attorney to replace Beck with another attorney. But after the substitution form was filed, Beck

had three telephone consultations with the plaintiffs about negotiations with the landlord and billed them for that work. The Court of Appeal observed that "[a] strong argument" could be made that the substitution of attorney demonstrated that the ongoing relationship between the Nielsens and Beck had ended. (*Id.* at p. 1051.) But the evidence of the telephone consultations after that time raised a triable issue of material fact as to the tolling of the statute under the continuous representation rule. (*Ibid.*)

Our case is distinguishable. Here, while Lockton alleges many acts by respondents undertaken to represent his interests against the Morrison defendants before he retained Kornblum to sue them in state court, he alleges no continuing conduct by respondents *on that subject matter* after he hired Kornblum. The fact that respondents continued to represent Lockton in the federal action, which was replete with allegations against the Morrison defendants, is not enough to establish continuing conduct after Lockton chose to pursue those claims through another attorney in state court.

Lockton's reliance on *O'Neill v. Tichy* (1993) 19 Cal.App.4th 114 [25 Cal.Rptr.2d 162], is misplaced for similar reasons. In *O'Neill*, clients suspected their attorney had committed malpractice, retained malpractice counsel to investigate that claim, but continued to utilize their attorney to perform services in the matter in which the malpractice was suspected. The Court of Appeal held: "[T]he client's awareness of the attorney's negligence does not interrupt the tolling of the limitations period so long as the client permits the attorney to continue representing the client regarding the specific subject matter in which the alleged negligence occurred." (*Id.* at pp. 120–121.)

*Gold v. Weissman* (2004) 114 Cal.App.4th 1195, 1201 [8 Cal.Rptr.3d 480] on which Lockton relies, also is distinguishable. In *Gold*, the defendant attorney failed to file a timely complaint for medical malpractice on behalf of the client. After notifying the client that her claim had been lost because the statute of limitations had run, the attorney offered a monetary settlement, drafted a complaint to be filed with the Medical Board of California, and sought compensation for the client from the attorney service he blamed for the loss of the client's claim. The court adopted the formulation applied in *Gurkewitz v. Haberman, supra*, 137 Cal.App.3d at page 333: "[S]o long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as [her] representative." The *Gold* court held that both the board complaint and the unfiled lawsuit arose from the same event, the malpractice of the client's physician, and that the common purpose of both was to permit the client some measure of redress for her injuries. It concluded the attorney's representation was continuous and that the statute of limitations was tolled. (*Gold v. Weissman, supra*, 114

Cal.App.4th at p. 1201.) Unlike our case, the defendant attorney did not tell the client she should retain separate counsel to pursue her claims and she did not do so.

Lockton argues the trial court's ruling was contrary to the public policy underlying Code of Civil Procedure section 340.6, subdivision (a). He cites *Laird v. Blacker* (1992) 2 Cal.4th 606 [7 Cal.Rptr.2d 550, 828 P.2d 691], in which the Supreme Court examined the legislative history of the continuous representation rule: "This 'continuous representation' rule was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' (Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977.)" (*Id.* at p. 618.)

The federal case was still in active litigation while the statute of limitations was running as to Lockton's claim for malpractice from the loss of his action against the Morrison defendants. He argues a severe conflict with respondents would have arisen if he was forced to sue them for malpractice while the federal action was pending. He speculates that respondents would have been disposed to lose a summary judgment motion in the federal action to demonstrate that the claim against the Morrison defendants was without merit, a defense to the malpractice claim in this action. This speculation that respondents would have engaged in unethical behavior does not compel a conclusion that continuous representation has been demonstrated.

In any event, Lockton had options to avoid litigating the malpractice case against respondents while the federal action in which they represented him was active. The Supreme Court in *Beal Bank, SSB v. Arter & Hadden, LLP*, *supra*, 42 Cal.4th at pages 513–514, acknowledged various methods by which the potential disruption of an attorney-client relationship may be reduced, such as voluntary tolling agreements, or stays of the malpractice suit until the underlying litigation is resolved. Lockton, an attorney who alleged he actively supervised litigation on behalf of Interactive and wrote detailed strategy memoranda to his counsel regarding the various cases, is not the typical unwary client whom courts have been constrained to protect. As the exhibits to the fifth amended complaint demonstrate, he repeatedly directed the strategy to be used by respondents in the federal action.

■ We conclude the trial court properly sustained the demurrer on the ground that respondents did not continue to represent Lockton on his claims against the Morrison defendants for a sufficient time to toll the statute of limitations in this action. It is barred.

### III

Quinn Emanuel and Richard Schirtzer appeal from denial of their requests for attorney fees as prevailing parties. Lockton argues fees were not appropriate here, citing *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259]. He argues that case stands for the proposition that lawyers who successfully represent themselves in a dispute with former clients are not entitled to recover fees. In *Trope*, the Supreme Court held that an attorney litigant who proceeds in propria persona rather than retaining another attorney may not recover reasonable attorney fees under Civil Code section 1717 (section 1717). (11 Cal.4th at p. 278.) The law firm of Trope & Trope, representing itself, sued a former client for unpaid legal fees, and the client cross-complained for legal malpractice. The jury awarded damages to both the firm and the former client on his cross-complaint. The client opposed the firm's request for fees on the ground it had represented itself throughout the litigation. (*Ibid.*)

██ "California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees. [Citations.] The Legislature codified the American rule in 1872 when it enacted Code of Civil Procedure section 1021, which states in pertinent part that 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties. . . .' [Citation.]" (*Trope v. Katz, supra*, 11 Cal.4th at pp. 278–279.) The *Trope* court addressed the exception to this rule, which applies "when there is an 'agreement, express or implied, of the parties' that allocates attorney fees.' (*Id.* at p. 279.) It held that "[a]lthough Code of Civil Procedure section 1021 gives individuals a rather broad right to 'contract out' of the American rule by executing such an agreement, these arrangements are subject to the restrictions and conditions of section 1717 in cases to which that provision applies. [Citations.]" (*Ibid.*)

Section 1717 provides: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The retainer agreement between Quinn Emanuel and Lockton contains a fee clause which provides: "The prevailing party in any action or proceeding to enforce any provision of this agreement will be awarded attorneys' fees and costs incurred in that action or proceeding, including, without limitation, the value of the time spent by QEUO&H attorneys to prosecute or defend such

an action (calculated at the hourly rate(s) then normally charged by QEUO&H to clients which it represents on an hourly basis) . . . ."

Both Quinn Emanuel and the individual defendant, Schirtzer, a member of that firm, were represented by other attorneys of the firm in this action. We begin our discussion with Lockton's argument that Quinn Emanuel and Schirtzer are not entitled to fees because, under section 1717, fees are not authorized in a legal malpractice action, citing *Loube v. Loube* (1998) 64 Cal.App.4th 421 [74 Cal.Rptr.2d 906] (*Loube*).

## A. *Loube*

In *Loube*, the plaintiffs sued their former attorneys, claiming professional negligence, constructive fraud, breach of fiduciary duty and breach of contract. The attorneys had represented the plaintiffs in an action involving a real estate partnership, which was resolved by default judgment for more than $200,000 in compensatory damages and $200,000 in punitive damages. The defaulting defendants sought relief from the award because no specific amount of damages had been stated in the complaint. The trial court reduced the compensatory damages to the jurisdictional minimum of $25,000. The plaintiffs sued their former attorneys seeking to hold them responsible for the reduction in the compensatory damage award. After conducting a " 'trial within a trial,' " the court granted the defendant attorneys' motion for judgment after finding that each plaintiff would have been awarded only $12,850 in compensatory damages, and no award of punitive damages, had the matter gone to trial. (*Loube, supra,* 64 Cal.App.4th at p. 425.) The defendant attorneys were awarded substantial attorney fees. The retainer agreement was narrowly drawn in language adopting section 1717: " '[I]f legal action or arbitration is necessary to enforce the terms of this Agreement, the prevailing party shall recover reasonable attorneys' fees.' " (64 Cal.App.4th at p. 429.)

The court in *Loube* recognized that professional negligence constitutes both a tort and a breach of contract. (*Loube, supra,* 64 Cal.App.4th at p. 429.) The court concluded, however, that the action was for negligence and was not brought " 'on the contract.' " (*Ibid.*) It also noted that an action for fraud sounds in tort and is not treated as an action on the contract for the purposes of an attorney fee award, even where the underlying transaction in which the fraud occurred involved a contract containing an attorney fee clause. (*Id.* at p. 430.) The court reasoned: "Here, although the parties had a contractual relationship, and appellant's claim for legal negligence arose from the relationship between them, which relationship was founded on a contract, the cause of action sounded in tort and was no more 'on the contract' than a claim for breach of fiduciary duty or for fraud involving a contract. It follows

that Civil Code section 1717 provides no basis for an award of attorney fees." (*Ibid.*, compare with *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 [76 Cal.Rptr.3d 325] [" '[C]alifornia courts liberally construe the term " ' "on a contract" ' " as used within section 1717. [Citation.] As long as the action "involve[s]" a contract it is " 'on [the] contract' " within the meaning of section 1717. [Citations.]' "].)

In *Loube*, the court recognized that "Code of Civil Procedure section 1021 authorizes an award of fees where, completely apart from Civil Code section 1717, the parties have agreed that fees will be available in the action being litigated. [Citation.] The narrowly drawn attorney fee provision here, however, providing for the payment of fees for an action brought to enforce the terms of the parties' agreement, cannot be read as a contractual agreement to award fees in an action brought for legal malpractice." (*Loube, supra*, 64 Cal.App.4th at p. 430.)

The *Loube* court concluded that time spent responding to the plaintiffs' claims that the defendants' fees were excessive was compensable under section 1717. (*Loube, supra*, 64 Cal.App.4th at pp. 430–431.) The published portion of the opinion does not discuss why the other causes of action brought by the plaintiffs, including a cause of action for breach of contract, were not addressed in the discussion of attorney fees.[7] The *Loube* court did not discuss *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101 [51 Cal.Rptr.2d 286] (*Abdallah*), which held that no apportionment is required where the claims for which fees are recoverable are those that have common issues, common operative facts, related legal theories, or require the presentation of virtually identical evidence. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83]; *Abdallah, supra*, 43 Cal.App.4th at p. 1111.)

The gravamen of Lockton's causes of action, each of which incorporates the preceding allegations, is that Quinn Emanuel and Schirtzer agreed to represent his claims against the Morrison defendants and failed to preserve them by filing a timely action. Common legal theories, including the statute of limitations on which respondents ultimately prevailed, were raised by these claims. The evidence at trial would have been the same. It was " 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units' (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 [168 Cal.Rptr. 525])." (*Abdallah, supra*, 43 Cal.App.4th at p. 1111.)

---

[7] Unidentified issues concerning these other claims apparently were addressed in a portion of the opinion which was not certified for publication. (See *Loube, supra*, 64 Cal.App.4th at pp. 421, 428.)

As we discuss in more detail below, the trial court's ruling was based in part on the conclusion that Schirtzer could have defended the action on the ground he was not a signatory to the retainer agreement containing the fee clause. But, as Schirtzer points out, he raised this defense unsuccessfully in each demurrer. Moreover, Schirtzer was a defendant on the other causes of action, which were so intertwined with the contract cause of action that allocation or apportionment of fees was not required. We conclude that *Loube, supra,* 64 Cal.App.4th 421 is not applicable on the facts presented and does not bar an award of fees to either defendant. Schirtzer, an individual member of Quinn Emanuel represented by other members of the firm, is differently situated than the law firm with regard to the availability of fees. We turn to our analysis of his right to fees.

## B. *Schirtzer*

The trial court denied Schirtzer's application for fees. As we understand it, the court found that the defense of the contract and tort causes of action was not intertwined as to him. It reasoned that because Schirtzer was not a signatory to the retainer agreement, he could not be liable for breach of contract. The trial court apparently concluded Schirtzer's defense on the contract claim therefore was distinct from his defense on the tort claims: "Thus, the individual defendants[8] would be entitled only to fees incurred for the defense that they were not parties to the contract, and could not have breached the [contract]."

Schirtzer argues that Lockton's contract and tort causes of action were inextricably intertwined and therefore no apportionment of his fees was required, citing *Abdallah, supra,* 43 Cal.App.4th at page 1111. The trial court acknowledged this principle in its ruling, but found that the causes of action were not so intertwined because Schirtzer had a simple defense on the cause of action for breach of contract. Implicit in this ruling is the conclusion that, therefore, the bulk of Schirtzer's representation concerned the tort claims. We have concluded that the contract and tort claims were inextricably intertwined, contrary to the trial court's ruling. In addition, it is settled that a defendant who is not a signatory to the contract with the fee clause is entitled to fees when sued on the contract "as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation . . . ." (*Reynolds Metals Co. v. Alperson, supra,* 25 Cal.3d at p. 128.)

In *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212 [104 Cal.Rptr.2d 461] (*Gilbert*), the court held that "an attorney litigant

---

[8] Schirtzer was the only individual defendant who was a member of Quinn Emanuel.

represented by other attorneys in his firm, is not a litigant in propria persona and thus *Trope*[, *supra*, 11 Cal.4th 274] does not bar his recovery of reasonable attorney fees under Civil Code section 1717." (*Gilbert*, at p. 220.) Here, as in *Gilbert*, Schirtzer was a party defendant represented by other members of Quinn Emanuel. He was not attorney of record on the defense of this action. He was not in propria persona and on that ground, *Trope* is inapposite. The trial court erred in denying fees to Schirtzer.

### C. *Quinn Emanuel*

The trial court said of Quinn Emanuel's argument for fees that "in a nutshell . . . there is no way to apportion the fees incurred by the firm on contract claims from the fees incurred by the individual defendants on the tort claims, therefore, the court should award all fees incurred by the firm." Lockton's theory of liability against Quinn Emanuel was agency and respondeat superior based on the acts and omissions of Schirtzer. Each cause of action was alleged against all of the respondents. The court continued: "Defendants, if they so wished, could provide sufficient information in order to allow the plaintiff and the court to make a fair determination as to what fees were incurred defending the individual defendants against any breach of the contract claim. As Defendants could have, but have not, provided such evidence, then no fees will be awarded."

But since, as we have discussed, the claims against Quinn Emanuel were so intertwined, no allocation was required. In addition, because the claims against Schirtzer were the same as those against Quinn Emanuel, no apportionment as to fees expended on his defense was required. This conclusion does not dispose of the issue of Quinn Emanuel's right to fees.

Like the trial court, we find *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1206 [46 Cal.Rptr.3d 845] (*Witte*) instructive. In *Witte*, a law firm (KLA) was sued for intentional interference with contract on the theory that it communicated with a client represented by the plaintiff lawyer before that relationship was terminated. KLA brought an anti-SLAPP special motion to strike under Code of Civil Procedure section 425.16. The trial court granted the motion and awarded fees to KLA.

On appeal, the plaintiff argued KLA was not entitled to fees. Initially, the *Witte* court observed that the principles governing an award of attorney fees to prevailing attorneys or law firms under section 1717 also apply in the context of an award of fees for a successful anti-SLAPP motion under Code of Civil Procedure section 425.16, subdivision (c). (*Witte, supra*, 141 Cal.App.4th at pp. 1208–1209.) The Court of Appeal concluded that the defendant law firm was not entitled to an award of fees, distinguishing *PLCM*

*Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511] and *Gilbert, supra,* 87 Cal.App.4th 212. In *PLCM Group, Inc., supra,* 22 Cal.4th 1084, the Supreme Court held that a corporation represented by in-house counsel may recover attorney fees under section 1717.

The *Witte* court concluded: "Here, unlike *PLCM Group* and *Gilbert,* but like *Trope,* there is no attorney-client relationship between KLA and its individual attorneys. The individual KLA attorneys are not comparable to in-house counsel for a corporation, hired solely for the purpose of representing the corporation. The attorneys of KLA are the law firm's product. When they represent the law firm, they are representing their own interests. As such, they are comparable to a sole practitioner representing himself or herself. Where, as in *Gilbert,* an attorney is sued in his or her individual capacity and . . . obtains representation from other members of his or her law firm, those other members have no personal stake in the matter and may, in fact, charge for their work. Not so with a law firm that is sued in its own right and appears through various members." (*Witte, supra,* 141 Cal.App.4th at p. 1211.)

The court reasoned that KLA incurred no attorney fees on the special motion to strike because all the work was done by members of the firm, and therefore, it was not entitled to attorney fees. (*Witte, supra,* 141 Cal.App.4th at p. 1211; see also *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 93 [100 Cal.Rptr.3d 152] [it is settled that if a firm represents itself in litigation, it may not recover attorney fees for that work].)

Here, defendant Quinn Emanuel was represented in this litigation by members of the firm. Under *Trope v. Katz, supra,* 11 Cal.4th 274, *Witte, supra,* 141 Cal.App.4th at page 1211, and *Gorman v. Tassajara Development Corp., supra,* 178 Cal.App.4th at page 93, it was not entitled to fees under section 1717. But Quinn Emanuel points out that the fee clause in its retainer agreement was broader than the fee clauses in the cases we have discussed. It claims a right to fees under that agreement, as allowed under Code of Civil Procedure section 1021.

The fee clause in the retainer agreement provides: "The prevailing party in any action or proceeding to enforce any provision of this agreement will be awarded attorneys' fees and costs incurred in that action or proceeding, *including, without limitation, the value of the time spent by QEUO&H attorneys to prosecute or defend such an action (calculated at the hourly rate(s) then normally charged by QEUO&H to clients which it represents on an hourly basis)* . . . ." (Italics added.) Quinn Emanuel's argument is based on the italicized language in the fee clause. The parties cite no case in which a fee clause used this language, and we have found none.

 "If a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims: '[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract.' (*Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 [5 Cal.Rptr.2d 154].)" (*Santisas* v. *Goodin* (1998) 17 Cal.4th 599, 608 [71 Cal.Rptr.2d 830, 951 P.2d 399].) " '[T]o determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the lease, and the facts are not in dispute, such review is conducted de novo. [Citation.]' [Citation.] 'As the case law makes clear, the test is not whether the cause of action sounds in tort or contract. Instead, the sole question is the intent of the parties: did they intend to authorize the prevailing party to recover its attorney fees for a tort cause of action. [Citations.]' (*Allstate Ins. Co.* v. *Loo* (1996) 46 Cal.App.4th 1794, 1798 [54 Cal.Rptr.2d 541].)" (*Chinn* v. *KMR Property Management* (2008) 166 Cal.App.4th 175, 182–183 [82 Cal.Rptr.3d 586] [under fee clause allowing fees to prevailing party in " 'any legal action or proceeding brought by either party to this agreement' " fees were awarded to prevailing party in tort action related to tenancy based on lease agreement].)

The broad scope of the fee clause in this case contrasts with the clause in *Loube, supra*, 64 Cal.App.4th at page 430. That court recognized that Code of Civil Procedure section 1021 provided an independent basis for a fee award, if the contractual fee provision was broad enough to encompass legal malpractice. (64 Cal.App.4th at p. 430.) The attorney fee clause at issue in *Loube* provided: " '[I]f legal action or arbitration is necessary to enforce the terms of this Agreement, the prevailing party shall recover reasonable attorneys' fees.' " (*Id.* at p. 429.) The court in *Loube* concluded "[t]he narrowly drawn attorney fee provision here, . . . cannot be read as a contractual agreement to award fees in an action brought for legal malpractice." (*Id.* at p. 430.)

Based on the broad language of the fee clause, we conclude that Lockton agreed to pay Quinn Emanuel for the value of the time spent by attorneys in that firm to prosecute or defend an action based on the attorney-client relationship created by the retainer agreement. The trial court erred in denying fees to Quinn Emanuel. We remand to the trial court for a determination of the reasonable fees to which defendants Schirtzer and Quinn Emanuel are entitled.

## DISPOSITION

The judgment of dismissal of Lockton's fifth amended complaint is affirmed. The trial court's order denying an award of attorney fees to Schirtzer and Quinn Emanuel is reversed. The matter is remanded for a determination of the fee awards. Schirtzer and Quinn Emanuel are to have their costs on appeal.

Willhite, J., and Manella, J., concurred.

A petition for a rehearing was denied May 13, 2010, and the petition of appellant David B. Lockton for review by the Supreme Court was denied September 1, 2010, S184036.