[No. A057688. First Dist., Div. Five. Oct. 4, 1993.]

EDWIN R. O'NEILL et al., Plaintiffs and Appellants, v.
GEORGE J. TICHY II et al., Defendants and Respondents.

**COUNSEL**

Billet & Kaplan, Jerome S. Billet, Paul N. Glasser and Mason B. Brown for Plaintiffs and Appellants.

McCutchen, Doyle, Brown & Enersen, David M. Heilbron and Alfred C. Pfeiffer, Jr., for Defendants and Respondents.

## OPINION

**HANING, J.**—Subdivision (a)(2) of section 340.6 of the Code of Civil Procedure[1] provides that the statute of limitations for legal malpractice is tolled during the period that the attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged malpractice occurred. In this case we hold this statutory tolling period is unaffected by the plaintiff's knowledge of the attorney's wrongful act or omission, as long as the representation continues.

### FACTS

In 1975 appellants Edwin R. O'Neill et al. retained respondents George J. Tichy II et al.[2] to generally represent them regarding their business operations and specifically to advise them how to reduce labor costs. In 1977 appellants reorganized their operation by closing a slaughterhouse and replacing it the following month with four new, nonunion companies which paid wages below the level previously paid under collective bargaining agreements. As a result, two unions filed claims with the National Labor Relations Board (NLRB) alleging that O'Neill engaged in unfair labor practices. In 1982 an administrative law judge (ALJ) found that O'Neill and the four companies had committed unfair labor practices in connection with the closure and reopening of the slaughterhouse.

In 1982 after the ALJ issued his decision, O'Neill sought second opinions concerning the NLRB proceedings from an attorney in Nebraska and from a Stanford Law School professor. In 1982 or 1983 O'Neill spoke with Attorney Robert Carter, who opined that malpractice had been committed and asked O'Neill if he had considered a malpractice action. O'Neill responded negatively, stating he did not consider such action to be "an appropriate thing." Also in 1982 a Florida attorney asked O'Neill if he had considered a possible malpractice action against respondents, and O'Neill again replied, "No." On some unspecified occasions after the ALJ's decision issued, O'Neill discussed a malpractice claim against respondents with Don Turner, owner of one of the four new companies. In 1985 O'Neill consulted Attorney Thomas Giovacchini for another opinion concerning the NLRB proceedings.

In May 1988 the NLRB affirmed the ALJ's decision, and respondents advised appellants that it was unlikely the decision would be overturned.

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]Also appealing are O'Neill, Ltd., J. E. O'Neill, Inc., Food Equipment Leasing Company and Amalgamated Meat Company. Also responding is the law firm of Littler, Mendelson, Fastiff & Tichy.

Within a week of the NLRB's May 1988 decision, O'Neill told Lee Schultz, his second-in-command and president of J. E. O'Neill, Inc., that he thought respondents had "screwed up." At approximately the same time, O'Neill told his friend, George Olsen, that he thought respondents had improperly handled the NLRB proceedings, and Olsen referred him to James Carter, an attorney represented to be experienced in the areas of labor law and legal malpractice.

In July 1988 O'Neill retained Carter regarding respondents' perceived malpractice. In September O'Neill notified respondents in writing that although he wanted them to "continue to protect our appeal to the Ninth Circuit," he wanted to delay pursuing the appeal in order to pursue a negotiated settlement of the NLRB proceedings. He decided to retain other counsel to handle the settlement negotiations due to his concern about a strained relationship between respondents and the unions' attorneys. Respondents agreed that, due to animosity between them and the unions' lawyers, it would be best to utilize other counsel, whom they recommended. Respondents were asked to make their files regarding the NLRB action available for review by the new attorney and to provide him office space and "background" advice on the matter.

By September 1988 Carter's cocounsel in the instant case charged his time to "O'Neill v. Littler, Mendelson." In February 1989 appellants sent a damage study to Carter identifying purported errors by respondents "[i]n addition and in support of the areas of malpractice, which you have indicated [respondents] engaged in . . . ." On February 17, 1989, appellants formally discharged respondents in writing.

Between July 1988 when appellants retained Carter and February 1989 when they discharged respondents, respondents continued to advise and bill appellants regarding the possible settlement and NLRB appeal.

On February 16, 1990, appellants filed the instant legal malpractice action alleging that respondents negligently advised them regarding the reorganization, claiming damages of approximately $30 million. Respondents moved for summary judgment on the grounds, among others, that the action was barred by the statute of limitations. O'Neill's declaration submitted in opposition to the summary judgment motion stated that although he concluded as early as 1982 that respondents had made mistakes, he did not lose trust or confidence in them. He believed that respondents were too competent and experienced to "commit malpractice which met legal definitions." Rather than expend funds seeking a legal opinion as to whether respondents committed malpractice, O'Neill chose to pay respondents to represent appellants in the NLRB proceedings. Prior to 1988, O'Neill believed that if

respondents succeeded in overturning the ALJ's decision there would be no basis for a finding of malpractice. It was only after the NLRB's 1988 decision that O'Neill decided he should obtain an opinion regarding a possible malpractice claim.

The trial court granted summary judgment after determining the action was barred by the statute of limitations and thereafter denied appellants' motion for reconsideration.

## DISCUSSION

■ In order to prevail, a defendant moving for summary judgment has the obligation of conclusively negating a necessary element of the plaintiff's cause of action or establishing a complete defense thereto. (*Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 633-634 [164 Cal.Rptr. 621].)

■ Appellants challenge the trial court's conclusion that the statute of limitations began running at the latest when they consulted Attorney Carter in 1988. They argue that because respondents continued to represent them until appellants formally discharged them, the statute was tolled until that date.

Section 340.6 provides, in relevant part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] . . . [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." ■ The tolling provisions of section 340.6 apply to both the one-year and the four-year provisions. (*Johnson* v. *Haberman & Kassoy* (1988) 201 Cal.App.3d 1468, 1474 [247 Cal.Rptr. 614]; *Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328, 336 [187 Cal.Rptr. 14].)

■ The continuous representation rule was adopted in order to " 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired. . . .' " (*Laird* v.

*Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691], citations omitted; *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165, 1171 [16 Cal.Rptr.2d 837].) The rule also recognizes that the client is " 'necessarily at a disadvantage to question the reason for the tactics employed or the manner in which the tactics are executed.' " (*Gurkewitz* v. *Haberman, supra,* 137 Cal.App.3d at p. 333.)

■ Respondents contend that at the very latest, tolling of the statute ended by July 1988 when appellants retained Attorney Carter to investigate the possibility of their malpractice. They argue that upon the retention of malpractice counsel, appellants' relationship with respondents "was no longer 'marked' with the trust and confidence the tolling rule 'envisions.' " For this proposition they rely on several cases from New York and Ohio where the continuous representation doctrine failed to toll the legal malpractice statute of limitations. However, unlike California, the continuous representation doctrines in New York and Ohio exist by virtue of common law rather than statute. In addition, none of the cited cases presents the factual scenario with which we are confronted here.

■ " '[Statutes of limitation] come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. . . . [T]he history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.' " (*Duty* v. *Abex Corp.* (1989) 214 Cal.App.3d 742, 752 [263 Cal.Rptr. 13].) ■ In interpreting a statute of limitations, we must give effect to the statute's "plain meaning." (*Id.,* at p. 749.) Where the meaning of a statute of limitation is clear, "it is the function of this court to apply the statute as written. [Citation.]" (*Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101, 107 [200 Cal.Rptr. 52].)

■ We are confronted with the situation of clients who suspect their attorney has committed malpractice, retain malpractice counsel to investigate such a claim, yet continue to utilize their attorney to perform services related to the matter in which the malpractice is suspected. While we agree with respondents that such action does not suggest an attorney-client relationship marked with trust and confidence, trust and confidence are not stated requirements of the continuous representation tolling provision of section 340.6, subdivision (a)(2). Were it not for the express statutory tolling provisions we would agree with respondents, but the Legislature has not provided any exception to section 340.6, subdivision (a)(2).

A literal interpretation of section 340.6, subdivision (a)(2) leads to the conclusion that the client's awareness of the attorney's negligence does not

interrupt the tolling of the limitations period so long as the client permits the attorney to continue representing the client regarding the specific subject matter in which the alleged negligence occurred. Our conclusion is buttressed by *Gurkewitz* v. *Haberman*, *supra*, 137 Cal.App.3d 328, which also considered the tolling provision of section 340.6, subdivision (a)(2), and arrived at the same conclusion under similar circumstances.

■ Under the plain language of section 340.6, subdivision (a)(2), the statute of limitations for professional negligence was tolled until the date respondents ceased to represent appellants on the specific matter in which the malpractice allegedly occurred. The record reveals a triable issue of material fact concerning that date. There is evidence that respondents continued to bill appellants for work done on "the specific subject matter in which the alleged wrongful act or omission occurred" (§ 340.6, subd. (a)(2)) until the date of their formal discharge as appellants' attorneys. However, what they were authorized to do and the extent of their involvement is uncertain; there is also evidence that another attorney took over the subject matter at issue at an earlier date. ■ As *Gurkewitz* concluded, "so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative," and the statute of limitations is tolled. (*Gurkewitz* v. *Haberman*, *supra*, 137 Cal.App.3d at p. 333.) ■ In light of this conflicting evidence on a material fact affecting the statute of limitations' bar, summary judgment cannot be sustained.

The summary judgment is reversed. Costs to appellants.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied November 2, 1993, and respondents' petition for review by the Supreme Court was denied January 13, 1994. Panelli, J., was of the opinion that the petition should be granted.