[No. B213615. Second Dist., Div. Three. May 17, 2010.]

AMARILLYS LACLETTE, JR., Plaintiff and Appellant, v.
ALEXIS GALINDO et al., Defendants and Respondents.

920

**COUNSEL**

George Baltaxe for Plaintiff and Appellant.

Waxler, Carner, Brodsky, Gretchen S. Carner and Diana J. Coburn for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Amarillys Laclette, Jr. (Laclette), appeals a judgment following a grant of summary judgment in favor of defendants and respondents Alexis Galindo (Galindo) and Curd, Galindo and Smith (the Galindo firm) (sometimes collectively referred to as Galindo) in an action for legal malpractice.

The essential issue presented is whether Laclette's action is barred by the one-year statute of limitations, or whether the statute of limitations was tolled by Galindo's continuing representation of Laclette. (Code Civ. Proc., § 340.6, subd. (a)(2).)[1]

█ We conclude a triable issue of material fact exists as to whether Galindo continued to represent Laclette during the pendency of a settlement agreement in the underlying action, so as to toll the limitations period in the malpractice action. Irrespective of the lack of contact between Galindo and

---

[1] Unless otherwise specified, all further statutory references are to the Code of Civil Procedure.

Laclette over a two-year period, the evidence established the following: the trial court retained jurisdiction over the underlying settlement; the settlement obligated Laclette to pay the sum of $175,000 at the rate of $3,500 per month; Laclette was paying the installments as agreed; and Galindo remained Laclette's counsel of record.

Given these circumstances, we cannot say as a matter of law that Laclette could not reasonably expect Galindo to represent her in the event of issues arising concerning the performance of the settlement. We reject Galindo's theory that the two-year hiatus, when no legal services were required of Galindo with respect to the settlement agreement, had the effect of implicitly terminating Galindo's representation of Laclette.

Accordingly, the judgment is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The underlying action.*

Laclette was employed by Elite Properties doing business as First Class Realty (Elite). Laclette was Natalie Ramirez's (Ramirez) real estate agent in the purchase of certain real property located on Strickland Avenue in Los Angeles. Laclette's mother, Amaryllis Laclette, Sr., assisted Laclette in the transaction.

In the underlying action, Ramirez sued the Laclettes and Elite for breach of contract and fraud, contending they assured her there were no significant problems with the property and that she did not need an inspection, causing Ramirez to forgo an inspection of the property as a condition of purchase.

Galindo and the Galindo firm defended the Laclettes and Elite in the underlying action.

The underlying action originally was set for trial on February 18, 2004. On the date set for trial, the parties agreed to settle the matter (the initial settlement) on the following terms: $35,000 was to be paid equally by Laclette and Elite; an additional $15,000 would be paid equally by Laclette and Elite one year later; and the property would be advertised for sale at $450,000 with Elite waiving its commission on the listing and sale. Thus, under the initial settlement, Laclette would have paid Ramirez the total sum of $25,000.

The initial settlement subsequently was set aside by the trial court on various grounds, including the determination of a court-appointed appraiser that the property could not be sold for $450,000 and was only worth $365,000. The underlying action was then reset for trial.

Trial of the underlying action commenced on January 5, 2005, resulting in a jury verdict, which found Laclette, while in the course and scope of her employment with Elite, breached her fiduciary duty to Ramirez and that her actions constituted fraud. The jury awarded Ramirez $275,000 in compensatory damages.

Prior to proceeding with the punitive damages phase of the trial, the parties reached a settlement on January 25, 2005, in the total amount of $350,000, under which Elite would pay one-half and Laclette would pay one-half (the final settlement). As part of the final settlement, Laclette agreed to pay Ramirez $3,750 per month until the sum of $175,000 was fully paid.

Laclette has been making her payments as agreed. As of September 2008, Laclette still owed Ramirez about $14,000.

2. *The instant action for legal malpractice and breach of fiduciary duty.*

a. *Laclette's suit alleging a conflict of interest by Galindo.*

On February 9, 2007, Laclette filed the instant action against Galindo for legal malpractice and breach of fiduciary duty, alleging Galindo had a conflict of interest in representing both Elite and Laclette in the underlying action. Laclette pled "[n]umerous breaches of the [initial] Settlement Agreement were occasioned by the conduct of the defendant Elite, which precipitated the Settlement Agreement to be set aside by the Court at the request of Ramirez." Further, "[i]f [Laclette] had been represented by independent counsel, she could have settled her case separately from her co-defendants, so the default of the co-defendants would not have effected her settlement." Laclette contended that due to Galindo's conflict of interest, she was damaged in the amount of $150,000, calculated as the amount she was obligated to pay pursuant to the final settlement after trial (i.e., $175,000), less the amount that she would have paid (i.e., $25,000), had the initial settlement not been set aside by the court.

b. *Galindo's motion for summary judgment.*

Galindo moved for summary judgment, contending the action was barred by the one-year limitations period of section 340.6. Galindo asserted that

based on Laclette's own allegations, she discovered facts constituting Galindo's alleged wrongful acts or omissions no later than January 25, 2005, and sustained actual injury by that same date, when she became obligated to pay Ramirez the sum of $175,000, instead of the $25,000 that she would have paid had the initial settlement not been vacated. Based on Laclette's own allegations, Laclette had information or circumstances sufficient to put a reasonable person on inquiry, no later than January 25, 2005.

Galindo further argued the representation of Laclette ended no later than January 25, 2005, in that Galindo had no contact with Laclette after that date. Galindo contended the mere fact the trial court retained jurisdiction over the final settlement did not give rise to a tolling of the statute of limitations.

### c. Laclette's opposition.

In resisting summary judgment, Laclette contended her action against Galindo was not barred by the one-year limitations period of section 340.6 because, as part of the structured settlement, the trial court retained jurisdiction pursuant to section 664.6, and because Galindo remained attorney of record for Laclette, the statute was tolled pursuant to the continuing representation tolling provision of section 340.6, subdivision (a)(2).

In her responsive separate statement of undisputed facts, Laclette acknowledged she had had no contact with Galindo since the conclusion of the trial in the underlying action on January 25, 2005. However, Laclette argued that although she had been making her payments as agreed, "[t]here are still potential issues that may arise. For example, whether all payments have been made, the amounts of payments, the date of payments, whether Ramirez is entitled to an entry of judgment, or Laclette is entitled to a dismissal with prejudice. Galindo would be directly involved in resolving any such disputes."

### d. Trial court's ruling.

On October 24, 2008, the matter came on for hearing. The trial court granted summary judgment in favor of Galindo and the Galindo firm, finding no triable issue of material fact as to the application of the statute of limitations of section 340.6 to Laclette's causes of action for legal

malpractice and breach of fiduciary duty and that Laclette commenced this action more than one year after she discovered the facts constituting the alleged wrongful act or omission by defendants.

In its written ruling, the trial court based its determination on the following: (1) Laclette's claim for legal malpractice and breach of fiduciary duty is governed by the one-year limitations period of section 340.6; (2) Laclette discovered facts for purposes of commencing the one-year limitations period on January 24, 2005, at the conclusion of the trial in the underlying action; (3) Laclette sustained actual injury for purposes of commencing the one-year limitations period on January 24, 2005, when she became obligated to pay the settlement in the underlying action; (4) Laclette had no contact with Galindo after January 24, 2005; (5) Galindo did not provide any legal services to Laclette after January 24, 2005; and (6) Laclette filed the instant action on February 9, 2007.[2]

The trial court further ruled the fact that the court in the underlying action retained jurisdiction over the settlement in that action under section 664.6 did not constitute continuing representation that would toll the statute of limitations. The trial court found *Rubinstein v. Barnes* (1987) 195 Cal.App.3d 276 [240 Cal.Rptr. 535], was controlling. The trial court ruled Galindo's failure to formally withdraw as counsel did not constitute continued representation to toll the statute of limitations, and the fact the court retained jurisdiction over an issue does not constitute continued representation when the attorney performs no further services for the client.

Laclette filed a timely notice of appeal from the judgment.

## CONTENTIONS

Laclette contends the trial court's retention of jurisdiction under section 664.6 for purposes of enforcing the settlement had the effect of tolling the statute of limitations pursuant to section 340.6, subdivision (a)(2), based on Galindo's continued representation of Laclette.

## DISCUSSION

1. *Standard of appellate review.*

Summary judgment "motions are to expedite litigation and eliminate needless trials. [Citation.] They are granted 'if all the papers submitted show

---

[2] Although the undisputed facts established Laclette had no contact with Galindo after January 25, 2005, the trial court's order referred to the operative date as January 24, 2005. The one-day discrepancy is immaterial to the resolution of the issues presented by this appeal.

that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]" (*PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877].)

A defendant meets its burden upon such a motion by showing one or more essential elements of the cause of action cannot be established, or by establishing a complete defense to the cause of action. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action or a defense thereto. (*Aguilar, supra*, at p. 849; § 437c, subd. (p)(2).)

We review the trial court's ruling on a motion for summary judgment under the independent review standard. (*Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].)

2.  *Section 340.6 and the tolling provision for continuing representation.*

Section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no event shall the time for commencement of legal action exceed four years *except that the period shall be tolled during the time that any of the following exist:* [¶] . . . [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (Italics added.)

Thus, the limitations period is tolled while the attorney continues to represent the plaintiff regarding the same specific subject matter. (§ 340.6, subd. (a)(2).) The limitations period is tolled even if the client is aware of the attorney's negligence. (*O'Neill v. Tichy* (1993) 19 Cal.App.4th 114, 120–121 [25 Cal.Rptr.2d 162].) The Legislature's intent in adopting the continuing representation tolling provision contained in section 340.6 is set forth in the legislative history. There were two purposes: (1) to avoid the disruption of an

attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error; and (2) to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired. (*Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691].)

■ Section 340.6 "does not expressly state a standard to determine when an attorney's representation of a client regarding a specific subject matter continues or when the representation ends, and the legislative history does not explicitly address this question. *An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney.* (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 887–888 [110 Cal.Rptr.2d 877]; *Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1497 [35 Cal.Rptr.2d 169]; 3 Mallen & Smith, Legal Malpractice (2006 ed.) Statutes of Limitations, § 22.13, p. 385.) Some authorities state that the representation also ends if the attorney withdraws unilaterally without the consent of either the client or a court, despite any breach of duty, *if the client actually has or reasonably should have no expectation of further services.* (1 Mallen & Smith, Legal Malpractice, *supra*, Theory of Liability—Common Law, § 8.2, p. 948;[3] *Shumsky v. Eisenstein* (2001) 96 N.Y.2d 164 [726 N.Y.S.2d 365, 370–371, 750 N.E.2d 67].[4])" (*Gonzalez, supra*, 140 Cal.App.4th at pp. 28–29, italics added.)

■ As this court noted in *Gonzalez*, "[s]ome California courts have endorsed the purported 'New York rule' that for purposes of the continuing representation rule, an attorney-client relationship exists only as long as ' "there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney" ' and the relationship ' "is marked with trust and confidence." ' " (*Gonzalez, supra*, 140 Cal.App.4th at p. 29, quoting *Shapero v. Fliegel* (1987) 191 Cal.App.3d 842, 848 [236 Cal.Rptr. 696] [quoting *Muller v. Sturman* (N.Y.App.Div.1981) 79 A.D.2d 482 [437 N.Y.S.2d 205, 208]]; accord, *Hensley v. Caietti* (1993) 13 Cal.App.4th

---

3 " 'The relationship may be ended unilaterally if the lawyer's communication is such that the client understood or reasonably should have understood that no further services would be rendered. Although such a termination may be wrongful, *it does objectively end the client's expectation for further legal services.*' (1 Mallen & Smith, Legal Malpractice, *supra*, Theory of Liability—Common Law, § 8.2, p. 948.)" (*Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 29, fn. 5 [43 Cal.Rptr.3d 866], italics added (*Gonzalez*).)

4 " 'Of course, even when further representation concerning the specific matter in which the attorney allegedly committed the complained of malpractice is needed and contemplated by the client, the continuous representation toll would nonetheless end once the client is informed or otherwise put on notice of the attorney's withdrawal from representation.' (*Shumsky v. Eisenstein, supra*, 726 N.Y.S.2d at pp. 370–371.)" (*Gonzalez, supra*, 140 Cal.App.4th at p. 29, fn. 6.)

1165, 1171–1172 [16 Cal.Rptr.2d 837].) Other California courts "have rejected that purported rule because those requirements are not stated in . . . section 340.6. (*Worthington v. Rusconi, supra*, 29 Cal.App.4th at pp. 1497–1498; *O'Neill v. Tichy, supra*, 19 Cal.App.4th at p. 120.)" (*Gonzalez, supra*, 140 Cal.App.4th at p. 29.) In *Gonzalez*, "we agree[d] with *Worthington* and *O'Neill* that section 340.6, subdivision (a)(2) neither states nor implies that an attorney's representation of a client continues only as long as those conditions are present." (*Gonzalez, supra*, 140 Cal.App.4th at p. 29.)

■ In *Gonzalez*, we concluded "[a]bsent a statutory standard to determine when an attorney's representation of a client regarding a specific subject matter ends, and consistent with the purposes of the continuing representation rule, we conclude that for purposes of . . . section 340.6, subdivision (a)(2), in the event of an attorney's unilateral withdrawal or abandonment of the client, the representation ends *when the client actually has or reasonably should have no expectation that the attorney will provide further legal services.* [Citations.] That may occur upon the attorney's express notification to the client that the attorney will perform no further services, or, if the attorney remains silent, may be inferred from the circumstances. *Absent actual notice to the client that the attorney will perform no further legal services or circumstances that reasonably should cause the client to so conclude,* a client should be entitled to rely on an attorney to perform the agreed services and should not be required to interrupt the attorney-client relationship by filing a malpractice complaint. *After a client has no reasonable expectation that the attorney will provide further legal services,* however, the client is no longer hindered by a potential disruption of the attorney-client relationship and no longer relies on the attorney's continuing representation, so the tolling should end. To this extent and for these reasons, *we conclude that continuous representation should be viewed objectively from the client's perspective . . . .*" (*Gonzalez, supra*, 140 Cal.App.4th at pp. 30–31, italics added, fns. omitted.)

### 3. *Triable issue of material fact with respect to Galindo's continued representation of Laclette beyond January 25, 2005.*

Having reviewed the record, we conclude a triable issue of material fact exists as to whether Galindo continued to represent Laclette during the pendency of the settlement agreement, so as to toll the limitations period, despite the lengthy hiatus when no legal services were required with respect to the settlement agreement.

As a preliminary matter, this is not a case in which the client consented to termination or in which the trial court granted an application by counsel for withdrawal.

In seeking summary judgment, Galindo did not show the representation of Laclette had been fulfilled and that all agreed tasks for which Laclette retained Galindo had been completed. (*Gonzalez, supra,* 140 Cal.App.4th at p. 28.) Galindo merely showed there had been no contact between Galindo and Laclette between January 25, 2005, the date of the second settlement, and February 9, 2007, the date Laclette commenced the instant action.

Irrespective of the lack of contact between Galindo and Laclette during said two-year period, the evidence established the following: the trial court retained jurisdiction over the Laclette/Ramirez settlement; the settlement obligated Laclette to pay Ramirez $175,000 at the rate of $3,500 per month; Laclette was paying the installments as agreed; and Galindo remained Laclette's counsel of record.[5]

Given these circumstances, and objectively viewing continuous representation from the client's perspective, we cannot say as a matter of law that Laclette could not reasonably expect Galindo to represent her in the event of issues arising concerning the performance of the settlement. We reject Galindo's theory that the two-year hiatus, when no legal services were required of Galindo with respect to the settlement agreement, necessarily had the effect of implicitly terminating Galindo's representation of Laclette.

*Rubinstein v. Barnes, supra,* 195 Cal.App.3d 276, which the trial court found dispositive, is plainly distinguishable. There, "in a deposition, appellant admitted that after the one discussion about late payments, she never asked [counsel] to do anything further in connection with the dissolution, and that after the final decree was entered, she considered that 'it was over. That was it.' She admitted that after the dissolution had concluded, *she understood [counsel] had concluded his representation of her concerning that matter.*" (*Id.* at pp. 283–284, italics added.) Thus, in *Rubinstein,* it was undisputed the *agreed tasks or events had occurred* (see *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort, supra,* 91 Cal.App.4th at pp. 887–888), so as to end the attorney's representation of the client. Here, in contrast, that essential fact was not established on the motion for summary judgment.[6]

---

[5] On November 12, 2004, Attorney Michael Lanphere merely *associated* into the case; Galindo did *not* substitute out of the case.

[6] In addition to moving for summary judgment on the ground of the statute of limitations, Galindo sought summary judgment on the ground Laclette was incapable of establishing the essential element of causation. The trial court did not reach the issue of causation because it granted summary judgment on the ground Laclette's action was time-barred. The parties have not addressed the issue of causation in their appellate briefs and therefore we do not reach the issue. Because neither the trial court nor this court has addressed the issue of causation, Galindo is free to raise the issue on remand.

## DISPOSITION

The judgment is reversed. Laclette shall recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

On June 3, 2010, the opinion was modified to read as printed above.