Filed 1/11/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES C. KELLY, as Trustee, etc., | D067735 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00004832-CU-PN-CTL) |
| BARBARA J. ORR et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Reversed.

JW Howard Attorneys and John W. Howard for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing, Leah A. Plaskin and Thomas E. Daugherty for Defendants and Respondents.

James C. Kelly, as trustee of the Beverly Snodgrass Clark Inter Vivos 1999 Separate Property Trust (Trust), sued Barbara J. Orr, Joseph Holland, Gretchen Shaffer, and DLA Piper LLP (US) (Defendants) for professional negligence in relation to legal advice they provided to his predecessor trustee of the Trust.  Defendants demurred on statute of limitations grounds, arguing his action was barred by the one-year statute of

limitations under Code of Civil Procedure[1] section 340.6. The trial court sustained Defendants' demurrer without leave to amend, and Kelly filed a timely notice of appeal.

We conclude the statute of limitations was tolled under section 340.6, subdivision (a)(2), until March 22, 2013, the date Kelly alleges Defendants ceased representation of Kelly's predecessor trustee. Because Kelly filed suit on February 27, 2014, less than one year after Defendants ceased representation of the predecessor trustee, his action is not time-barred. We reverse the judgment and remand for further proceedings.

## FACTUAL SUMMARY[2]

Beverly Snodgrass Clark executed the Trust on December 3, 1999. She amended the Trust on November 28, 2001, when she executed the "First Amendment to The Beverly Snodgrass Clark Inter Vivos 1999 Separate Property Trust Dated December 3, 1999" (together with the original instrument, the Trust Agreement). Beverly[3] died in 2002, and her brother-in-law, George F. Clark, served as trustee of the Trust until he resigned in or about 2008.

The Trust Agreement designated Kelly as successor trustee of the Trust on George's resignation. However, Beverly's daughter, Rebecca Clark, seized control of the

---

[1]    All further references are to the Code of Civil Procedure, unless otherwise specified.

[2]    For purposes of this appeal, we accept as true the properly pleaded factual allegations of the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

[3]    We refer to the Clark family members by their first names for clarity and intend no disrespect.

Trust and its assets and succeeded George as trustee. Rebecca retained Defendants as counsel and acted on their legal advice throughout the time she served as trustee. Rebecca paid Defendants' legal fees from the Trust's assets.

Kelly alleges Defendants were negligent in providing legal advice to Rebecca, in her capacity as trustee of the Trust. Defendants allegedly advised Rebecca she was the legitimate trustee and the Trust had no obligation to pay any portion of inheritance taxes. As a result of Defendants' legal advice, Rebecca "purported to serve as trustee of the Trust; took control of the Trust's assets; misappropriated Trust assets; failed to pay taxes payable by the trust and paid tens of thousands of dollars in trust money to the defendants for their negligent representation." Kelly alleges Defendants' negligence caused over $300,000 of harm to the Trust.

On January 30, 2012, Kelly and Trust beneficiary Waldo Clark III (Wally) tried to remove Rebecca as trustee in favor of Kelly, by serving her with a "Notice of Removal of Trustee."[4] However, on Defendants' advice, Rebecca ignored this Notice and continued as trustee. On April 27, 2012, Wally filed a petition in Probate Court seeking to remove Rebecca as trustee (Probate Petition). On Defendants' advice, Rebecca refused to resign as trustee or relinquish control of the Trust records or assets. On August 30, 2012, Kelly and Wally again served Rebecca with a "Notice of Removal of Trustee," but on Defendants' advice, Rebecca refused to resign as trustee or relinquish control of the Trust records or assets.

---

[4] Under the Trust Agreement, Wally and Kelly jointly had the right to remove a trustee.

3

Rebecca and Wally settled their dispute on or about March 22, 2013, and Wally withdrew the Probate Petition shortly thereafter. Rebecca resigned as trustee on March 22, 2013, and Kelly replaced her as successor trustee that same day. Until she resigned, Rebecca retained Defendants as counsel and did not provide Kelly with access to the Trust assets or records.

PROCEDURAL BACKGROUND

On February 27, 2014, Kelly sued Defendants for professional negligence in connection with legal advice they provided to Rebecca, as trustee of the Trust. Kelly filed a First Amended Complaint (FAC) on October 31, 2014, before the court heard Defendants' demurrer to Kelly's original complaint. Defendants demurred to the FAC on December 5, 2014, arguing Kelly's action was time-barred under section 340.6, subdivision (a), which establishes a one-year statute of limitations for legal malpractice claims, subject to limited exceptions.

On January 23, 2015, the trial court sustained Defendants' demurrer without leave to amend. The court held Kelly knew of Defendants' alleged negligence "as early as April 2012 and no later than August of 2012" and "had maintained at those times that he was the successor trustee." The court held that although Rebecca did not resign as trustee until 2013, Kelly cited no authority that precluded him from commencing litigation against Defendants earlier. The court also held Kelly was not entitled to tolling under section 340.6, subdivision (a)(2), because "Defendants are never alleged to have represented [Kelly]." The court held Kelly's action for professional negligence was time-

4

barred under section 340.6. It also held Kelly could not allege facts to cure these defects and denied leave to amend. The court entered judgment on February 27, 2015, and Kelly filed a timely notice of appeal.

## STANDARD OF REVIEW

"On appeal from a judgment of dismissal entered after a demurrer has been sustained, this court reviews the complaint de novo to determine whether it states a cause of action. [Citation.] We assume the truth of all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 989.) "If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

## DISCUSSION

Subject to very limited exceptions, legal malpractice claims are subject to a one-year statute of limitations. (§ 340.6, subd. (a).) The limitations period is tolled, however, during the time "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." (§ 340, subd.

5

(a)(2).)  Central to this appeal is whether the tolling provision found in section 340.6, subdivision (a)(2) tolls the statute of limitations for *successor trustees* seeking to sue attorneys retained by their predecessor trustees.  Because we conclude it does, Kelly's action, filed on February 27, 2014, is not time-barred as a matter of law.[5]

Kelly alleges Defendants represented Rebecca in her capacity as trustee, not in her personal capacity.[6]  The FAC alleges Defendants provided legal advice to Rebecca concerning trust administration—specifically, regarding the Trust's tax obligations, Rebecca's ability to serve as trustee, and the effect of the 2012 notices of removal and Probate Petition.  The FAC incorporates by reference filings in which Defendants represented themselves to the probate court as "Counsel for Rebecca Clark, Trustee." The FAC also alleges the Trust paid Defendants' legal fees.  The Trust Agreement, incorporated into the pleadings, likewise grants trustees the power to employ attorneys "to advise and assist the trustee in the management of the trust . . . and compensate them from trust property."  On these factual allegations, the FAC adequately pleads that Defendants represented Rebecca in her capacity as trustee, not in her personal capacity.

---

[5]　　Defendants argue that the statute's silence on the matter should be dispositive. "While we agree that the tolling provisions of section 340.6 are exclusive, that does not end our inquiry."  (*Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 569.) The question is whether section 340.6, subdivision (a)(2), encompasses malpractice claims brought by successor trustees against their predecessors' attorneys.  (*See Jocer,* at p. 569 [holding that a different tolling provision under § 340.6, subd. (a) encompassed circumstances not explicitly set forth in the statute].)

[6]　　Defendants' own position is unclear: they simultaneously claim they "represented Rebecca as an individual, not as a trustee" and that they "only represented Rebecca (either as trustee or, as Appellant[] describes, as the purported trustee)."

(See *Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 529 ["[W]hen a fiduciary hires an attorney for guidance in administering a trust, the fiduciary alone, *in his or her capacity as fiduciary,* is the attorney's client."], italics added (*Borissoff*); *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1130 [by retaining an attorney to advise in trust administration, "the trustee, *qua* trustee, becomes the attorney's client"] (*Moeller*).)

Attorney malpractice suits typically require privity between the client filing suit and the attorney being sued. The trustee context, however, is slightly different. Under California law, "if the fiduciary who hired the attorney is replaced, the successor acquires the same powers the predecessor had in respect to trust [or estate] administration [citation], including the power to sue for malpractice." (*Borissoff, supra,* 33 Cal.4th at p. 530; see *Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 841-842 [the "successor fiduciary" exception to privity allows a successor to pursue a malpractice claim on behalf of the estate]; *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1396-1397 [estate representative has standing to bring a malpractice action against his predecessor's attorneys].)

The Supreme Court's ruling in *Borissoff* is guided by the principle that successor trustees must have "an effective remedy for legal malpractice that harms estates and trusts administered by successor fiduciaries." (*Borissoff, supra,* 33 Cal.4th at p. 531.) *Borissoff* is "grounded on the statutory provisions ensuring a successor fiduciary can seamlessly take over the fiduciary role and protect the interests of the estate, including recovering for

7

losses caused by legal malpractice occurring during the tenure of a prior fiduciary."

(*Stine v. Dell'Osso, supra,* 230 Cal.App.4th at p. 842 [discussing *Borissoff*].)

For similar policy reasons, the Supreme Court held in *Moeller* that a successor trustee succeeds in his predecessor's shoes with respect to attorney-client privilege. (*Moeller, supra,* 16 Cal.4th at pp. 1131-1133.) As *Moeller* explained:

> "To allow for effective continuous administration of a trust, the right of access to these communications and the privilege to prevent their disclosure must belong to the person presently acting as trustee, because that person has the duty to conduct all pending trust business. Therefore, for a trust to continue to operate smoothly when a change in trustee occurs, the power to assert the attorney-client privilege must pass from the predecessor to the successor." (*Id.* at p. 1133.)

*Moeller* noted a contrary rule—that the privilege is personal to the predecessor trustee— "would go far to prevent smooth transitions from one trustee to the next, would disrupt orderly administration of trusts, and would be detrimental to the interests of beneficiaries." (*Id.* at p. 1136.) As a general rule, "[t]he powers of a trustee are not personal to any particular trustee but, rather, are inherent in the office of trustee." (*Id.* at p. 1131.) Consequently, "a new trustee 'succeed[s] to *all* the rights, duties, and responsibilities of his predecessors' " with respect to "powers essential to effective administration of the trust." (*Ibid.*)[7]

---

[7] Defendants distinguish *Moeller, Borissoff,* and *Stine* by arguing these cases deal with "fundamentally different" issues, such as attorney-client privilege. Defendants miss the import of these cases, which recognized certain legal rights of successor trustees to ensure efficient administration for the benefit of trust beneficiaries.

*Moeller* and *Borissoff* articulate an overriding policy interest in ensuring smooth trust administration during periods of trustee transition. The Probate Code reflects the same interest, by providing that "the successor personal representative has the powers and duties in respect to the continued administration that the former personal representative would have had" (Prob. Code, § 8524, subd. (c)), including to "[c]ommence and maintain actions and proceedings for the benefit of the estate." (Prob. Code, § 9820, subd. (a).) Applying that policy interest here leads us to conclude that as successor trustee, Kelly assumed Rebecca's rights to avail of the continuous representation tolling provision under section 340.6, subdivision (a)(2).

In *Beal Bank*, the Supreme Court cautioned against interpreting section 340.6, subdivision (a)(2), in a manner that would invite open-ended liability for legal malpractice actions. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 512.) *Beal Bank* held that section 340.6, subdivision (a)(2) does not toll the statute of limitations for legal malpractice actions against a law firm after the attorney in question leaves the firm, taking the client with him or her. To hold otherwise, *Beal Bank* noted, would "revive indeterminate liability for firms every time an attorney leaves and takes a client with him or her." (*Ibid.*) Our ruling does not run that risk. Successor trustees may only avail of tolling under section 340.6, subdivision (a)(2), for as long as the attorney continuously represents a predecessor trustee on matters of trust administration. This tolling is premised on the ability of successor trustees to stand in their predecessor's shoes in matters of trust administration. (*Borissoff, supra,* 33 Cal.4th at pp. 530-531; *Moeller,*

9

*supra,* 16 Cal.4th at p. 1131.)  After the predecessor ends the attorney-client relationship (or should reasonably believe the relationship has ended), the successor's one-year limitations period begins to run.  (See *Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 927 [" 'An attorney's representation of a client ordinarily ends when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney.' "], italics omitted; *Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 30 [when an attorney unilaterally withdraws or abandons his client, "representation ends when the client actually has or reasonably should have no expectation that the attorney will provide legal services"].)[8]

Defendants argue that tolling under section 340.6, subdivision (a)(2), would be improper because there was no "continuous representation of [Kelly], or Rebecca, regarding any matter, let alone the same specific subject matter."  Defendants contend that after Kelly and Wally took steps to remove Rebecca as trustee, they became adverse to Rebecca, and it would "make no sense for [Defendants] to represent Rebecca as

[8]     A case applying *Beal Bank* to the trust context (*Steuve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 314) supports our conclusion.  In *Steuve*, beneficiaries of a trust sued a law firm that had employed Allen, an attorney retained by Novell, the predecessor trustee.  In March 2010, a successor trustee replaced Novell by court order.  Thereafter, the beneficiaries learned of the scope of Allen and Novell's fraudulent scheme.  (*Id.* at pp. 311-312.) The beneficiaries sued Allen's former law firm in September 2010.  (Allen left the firm in 2007.)  (*Id.* at p. 314.)  On appeal, the court considered whether the continuous representation provision of section 340.6, subdivision (a)(2), tolled the statute of limitations.  The court held that it would, but only for the period in which Allen remained employed by that law firm.  (*Id.* at pp. 311, 314.) Although *Steuve* involved a claim by beneficiaries, not a successor trustee, its analysis of section 340.6, subdivision (a)(2), nevertheless suggests that malpractice claims against an attorney hired by a predecessor trustee are subject to the tolling provisions of section 340.6, subdivision (a)(2).

predecessor trustee and then [Kelly] as the successor trustee (or to do so simultaneously)." Defendants assert Kelly's 2012 notices of removal and Wally's Probate Petition effectively "ended [Defendants'] representation of Rebecca as trustee." In other words, after Kelly "took the position that he legally succeeded Rebecca as trustee and that she was no longer trustee," Defendants contend "Rebecca could no longer employ attorneys as trustee[, and] [a]ny alleged attorney-client relationship with [Defendants], for purposes of tolling and regarding the same subject matter, was over."

Defendants conflate distinct legal issues. It is immaterial whether Defendants ever represented Kelly in any capacity, simultaneously to Rebecca or otherwise. As discussed, under California law, successor trustees stand in their predecessors' shoes with respect to legal malpractice claims against the predecessors' attorneys. (*Borissoff, supra,* 33 Cal.4th at p. 530.)[9] Therefore, to avail of tolling under section 340.6, subdivision (a)(2), it is sufficient for Kelly to plead that Defendants continuously represented *Rebecca* as trustee through February 27, 2013, one year before Kelly filed suit. Kelly does precisely that, alleging Defendants provided legal counsel to Rebecca through March 22, 2013, on issues relating to trust management.

---

9      There would not be a "clear conflict of interest," as Defendants contend. (*Borissoff, supra,* 33 Cal.4th at p. 534 ["To permit a successor fiduciary to sue an attorney hired by a predecessor to perform legal work for the benefit of the estate, when the attorney's negligent work has harmed the estate, creates no conflict of interest. With respect to matters of estate administration, the predecessor and successor fiduciaries' interests are identical . . . ."].)

11

There is no basis to conclude Defendants' attorney-client relationship with Rebecca ended when Kelly and Wally tried to remove Rebecca as trustee in 2012. Documents incorporated in the pleadings suggest Defendants continued to represent Rebecca as trustee long after Kelly took steps to remove her.[10] (Compare *Shaoxing City Maolong Wuzhong Down Products, Ltd. v. Keehn & Associates, APC* (2015) 238 Cal.App.4th 1031, 1038-1040 [no tolling under § 340.6, subd. (a)(2) where prior attorneys substituted out as counsel and provided no legal services or representation thereafter] with *Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1052 [tolling may be available under § 340.6, subd. (a)(2), notwithstanding attorney's withdrawal and substitution, where evidence shows the attorney continued to provide legal advice or services].)

Moreover, the FAC adequately alleges Defendants represented Rebecca regarding the same "specific subject matter" through March 22, 2013, as required under section 340.6, subdivision (a)(2). " '[S]o long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative.' " (*Jocer Enterprises, Inc. v. Price, supra,* 183 Cal.App.4th at p. 571.) Defendants' defense of Rebecca in connection with the 2012 notices of removal and Probate Petition was intertwined with their representation of Rebecca as trustee, including their counsel on whether Rebecca *could* serve as trustee. (See *ibid.* [attorney provided "continuous representation" under § 340.6, subd. (a)(2) by representing client in "intertwined and

---

10      Moreover, it is not clear how notices filed by *Kelly* could plausibly terminate Defendants' attorney-client relationship with *Rebecca*.

related" trade secrets and malicious prosecution suits]; see also *Gold v. Weissman* (2004) 114 Cal.App.4th 1195, 1201 [tolling statute of limitations under § 340.6, subd. (a)(2) where attorney continued to advise client in distinct, but related matters].)

Defendants' policy arguments against tolling are unavailing. The continuous representation tolling provision in section 340.6, subdivision (a)(2) "was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " (*Laird v. Blacker* (1992) 2 Cal.4th 606, 618.) Defendants are correct that under the facts alleged, tolling would not help them "mitigate damages caused in a representation that never existed." It is possible, however, for tolling to serve only one of two policy goals. (See, e.g., *Gonzalez v. Kalu, supra,* 140 Cal.App.4th at p. 30.) As to the second goal, Defendants argue they could not "run out the clock to prevent [Kelly] from filing a malpractice cause of action by continuing to represent Rebecca." By this, Defendants seem to suggest Kelly knew of the alleged malpractice in 2012 and could have sued Defendants as successor trustee sooner, with or without access to the Trust's assets or records.

We disagree. Defendants cite Probate Code section 16403 and *Moeller*, but these authorities suggest the opposite result:

> The Probate Code [section 16403] thus imposes a duty on a successor trustee, on pain of personal liability for neglect, to make reasonable inquiry into the predecessor trustee's administration of the trust and remedy any breaches, in order thereby to preserve the

13

> trust estate for the benefit of the beneficiaries. *To make this inquiry, the successor trustee must have access to the trust's legal files.* (*Moeller, supra,* 16 Cal.4th at pp. 1137-1138, italics added, fn. omitted.)[11]

Moreover, Defendants are attempting precisely what they claim not to do—"run out the clock" on Kelly's malpractice claim by continuing to represent Rebecca. They advised Rebecca that Kelly's attempts to remove her as trustee were invalid, continued representing her for over a year, and now defend Kelly's malpractice claim on limitations grounds by arguing that he was successor trustee all along. Indeed, the rule Defendants propose would require putative trustees, who have yet to receive Trust assets or records, to rush to file malpractice lawsuits against counsel for current trustees. Ultimately, we need not decide the issue. We conclude Kelly's alleged prior knowledge of Defendants' negligence is irrelevant to the analysis. Because Rebecca's prior awareness of Defendants' negligence would be immaterial to tolling under section 340.6, subdivision (a)(2) (*O'Neill v. Tichy* (1993) 19 Cal.App.4th 114, 120-121), we do not ascribe any relevance to *Kelly's* alleged awareness of the negligence.

We conclude the continuous representation tolling provision in section 340.6, subdivision (a)(2), applies to toll legal malpractice claims brought by successor trustees against attorneys who represented the predecessor trustee. The FAC alleges Rebecca

---

11      Neither *Bowles* nor *Wolf* is on point: neither imposes Probate Code requirements on successor trustees who have yet to gain access to a trust's books, accounts, or assets. (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 699; *Wolf v. Mitchell, Silberberg & Knupp* (1999) 76 Cal.App.4th 1030, 1038.) Because we conclude Kelly may avail of tolling under section 340.6, subdivision (a)(2), we need not decide whether he had standing to sue before Rebecca stepped down as trustee or delivered Trust assets or records to Kelly.

resigned on March 22, 2013, ending Defendants' representation of her as trustee. Kelly sued Defendants on February 27, 2014. Therefore, the FAC is not time-barred as a matter of law.

## DISPOSITION

The judgment dismissing Kelly's action is reversed with instructions to vacate the order sustaining Defendants' demurrer. Kelly is entitled to costs on appeal.


McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.

15