Filed 7/20/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DANA X. WANG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EDEN S. NESSE, as Executor, etc., et al.,<br><br>    Defendants and Respondents. | H048669<br>(Santa Clara County<br>Super. Ct. No. 15-CV-289298) |

Dana X. Wang sued her former attorney, Paul S. Nesse, alleging professional malpractice in his representation of Wang in her marital dissolution action. Following Nesse's death, his estate moved for summary judgment on the grounds that Wang's complaint, filed on December 21, 2015, was barred by the one-year statute of limitations in Code of Civil Procedure section 340.6.[1] According to Nesse's estate, although Wang and Nesse filed a substitution of attorney form on December 30, 2014, Nesse's representation of Wang had actually ended earlier, on December 3 or December 17 at the latest, when Wang "discharged" Nesse or "consented" to his withdrawal. The trial court agreed and granted the motion.

Wang appeals, arguing that there is a triable issue of material fact as to whether Nesse continued to represent her on December 21, 2014, so that Nesse's estate failed to establish that the statute of limitations bars her complaint as a matter of law. We agree with Wang and reverse.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

## I. Factual and Procedural Background[2]

### A. Factual background

In November 2013, Wang retained Nesse and his professional corporation, Paul S. Nesse, APC (Nesse),[3] to represent her in her marital dissolution action against her husband, Job Lawrence, in Santa Clara County Superior Court No. 2013-6-FL-010041. Nesse's representation of Wang continued until sometime in late 2014; the precise date that the representation ended comprises the crux of this appeal. Although the parties filed a fully executed substitution of attorney form with the court on December 30, 2014, after having signed it initially on December 23, Nesse contends the facts show that his representation of Wang ended prior to that.

Accordingly, we summarize herein the facts relating to Nesse's representation of Wang in the weeks preceding the filing of the substitution of attorney form.

On October 15, 2014, Leah Amini, counsel for Lawrence in the dissolution action, e-mailed Nesse asking if Wang would agree to let Lawrence take their children out of the state for the holidays. On October 24, Amini followed up her prior e-mail and asked Nesse, "May I hear from you regarding the below email please?" The record does not show any response from Nesse.

---

[2] We take our facts from the record that was before the trial court when it ruled on Nesse's summary judgment motion. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) We consider " ' "all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained," ' " and we " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Ibid.*, quoting *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

[3] We use the name "Nesse" in this opinion to refer either to Mr. Nesse himself or to Mr. Nesse and his professional corporation collectively. As explained below, we use the term "respondents" to refer to the estate of Paul S. Nesse, Eden S. Nesse as executor of the estate of Paul S. Nesse, and Paul S. Nesse, Inc., formerly known as Paul S. Nesse APC, the entities that are the respondents in this appeal.

On October 30, Nesse e-mailed Wang with the subject "Wang/Lawrence—URGENT MATTERS," stating: "Despite my efforts to contact you, you have not responded regarding fees. Please give me a call so we can discuss that issue. [¶] Additionally, we have not heard from you regarding the choice of a mediator. Also, you have not responded to my letter to you enclosing Ms. Amini's letter regarding Christmas. [¶] Obviously, if you do not respond, I am sure Mr. Lawrence will file a Request for Order and seek an order shortening time. We should try to avoid that circumstance. [¶] I look forward to hearing from you forthwith."

The record does not include any further communications until December 2, when Eva Martelle, counsel in the dissolution action for Wang's and Lawrence's minor children, e-mailed Nesse, stating: "[Children] have asked to go to Maine for the holidays. I reached out to [Amini] to see if Father was supportive of this request and she indicated that he is. Is Mother willing to agree to permit the kids to spend time in Maine over the holidays? If so, I can draft a Stipulation and Order to this effect. Let me know."

Nesse e-mailed Wang the next day, December 3: "[My paralegal] and I have attempted to contact you on many recent occasions, both by telephone and email, all to no avail. It is becoming increasingly difficult to represent you, since there is no communication between us. Moreover, the issue of attorney's fees is once again something which must be resolved. According to the billing dated November 25, 2014, the balance is $9,924.47. I am at a loss to understand why you essentially have refused to pay this bill and will not even communicate regarding its content. If there is a problem with the billing, you can simply ask me questions and I will do my best to respond in a forthright manner. [¶] Therefore, I must call upon you once again to contact me, and, if not, then I will have no other choice but to withdraw as your counsel. Attorneys cannot represent clients who fail to communicate. The opposite is also true, i.e. attorneys should communicate with clients. [¶] If I do withdraw from your case, then your billings are still

3

owed as of the date of withdrawal and we will move forward toward collection of those funds. [¶] Please contact me forthwith."

On December 9, Lawrence e-mailed Wang directly, stating: "Please alert Mr. Nesse that my attorney and Minor's Counsel (both cc'd) have sent Mr. Nesse several messages beginning in early October to last week (see below) regarding holiday travel for [children]. They have received no response from him. Please instruct Mr. Nesse to provide them with an answer. If we do not receive a reply our alternative is to file for a court order to allow [children] to travel as we have done in years past."

Wang responded to Lawrence via e-mail that same day. She posed a number of questions regarding the children, and asked Lawrence to "[p]lease inform me whether you will be replying to the questions below by December 10, 2014. You do not need to cc: my attorney."

Lawrence responded the next day, December 10, copying Amini and Martelle, stating: "Please share your concerns with Mr. Nesse and he can confer with Minor's Counsel on how to address them in the process of drafting the Stipulation and Order so [children] can spend time in Maine over the holidays. We all hope that we can avoid the time and expense of filing for a court order."

Also on December 10, Nesse's paralegal Kelly Stratico e-mailed Wang with the subject, "EXTREMELY URGENT," informing her that Lawrence had served an ex parte application seeking an order allowing the children to travel to the east coast for the holidays. The e-mail stated: "At 4:38 this afternoon, we were served with an ex-parte in your matter. I have attached a copy to this email. We must hear from you, as we need to file a response within 24 hours. [¶] It is **imperative** that you contact our office **immediately**."

Shortly thereafter on the same day, Stratico e-mailed Wang again, stating: "Attached is a Substitution of Attorney form which Paul requests that you sign and return to our office. Due to your failure to pay fees, he will not be responding to the ex-parte

served on our office this afternoon unless he is paid in full. Therefore, please either contact me to make payment arrangements or sign the attached Substitution of Attorney and return [it] to our office *immediately*. [¶] Thank you for your cooperation."

On December 12, Stratico forwarded Wang an e-mail from Amini informing them that the court had denied the ex parte application and had set a hearing on the matter for December 18, but that Nesse did not plan on attending the hearing: "Paul asked me to send you the attached and to tell you that he does not plan on attending the hearing. [¶] Please sign the Substitution of Attorney and forward to our office."

On December 15, Nesse e-mailed Amini and Martelle, with a copy to Wang, stating: "I will be withdrawing as Ms. Wang's attorney. Unless I receive a substitution of attorney forthwith, a Request for Order/Motion will be filed. As such, I will not be appearing at the hearing on December 18, 2014."

Later on December 15, Nesse e-mailed Wang directly, stating: "Once again, please sign the Substitution of Attorney and return to me immediately. If not, I will be required to file a Request for Order or Motion wherein I must state the reason for the request for withdrawal. I would rather handle this between you and I than to have the other two attorneys involved. [¶] I look forward to hearing from you, but so far you have been non-responsive."

On December 16, Nesse forwarded Wang an e-mail that he and Martelle had received from Amini regarding a stipulation Wang had agreed to, unbeknownst to Nesse, to allow the children to travel to the east coast for the holidays. Amini's e-mail stated: "It appears from Dana [Wang]'s email to Eva [Martelle] that Dana has agreed to allow the children to travel to Maine/East Coast during the winter holidays. [¶] I am attaching a stipulation and order that reflects the parties' agreement. Please review and let me know if we can take off Thursday's hearing. [¶] Although I did receive your email that you will no longer be representing Dana, until I receive a substitution of attorneys, I am obliged to send this to you."

5

The stipulation allowed the children to travel to the east coast for the holidays and took the December 18 hearing off calendar. It also stated that, "[t]he Petitioner Dana Wang, and the Respondent, Job Lawrence, together with their respective attorneys, Paul Nesse and Leah Moslehi Amini, and Eva Martelle, counsel for the minor children," agreed to the stipulation, and included signature blocks for those listed individuals. Wang had e-mailed Martelle directly on December 15, stating: "In light of Father's lack of response to my questions and to avoid a repeat of this summer's trip to Maine in court, please draft a stipulation and order for the children to spend time in Maine for the holiday season. Please bound the dates of travel and that the children must return to California by January 6 for the start of school on 1/7/2015. Please send the document directly to me for signature."

All parties and attorneys signed the stipulation, including Nesse on December 17; the court entered the order for the stipulation on December 18.

On December 19, Wang e-mailed Nesse, saying only "I will be available on Monday."

On December 22, Wang e-mailed Nesse again. In that e-mail, with the subject line "Request copy of Spousal Support Documentation," Wang addressed a variety of topics and summarized actions she had taken on her own behalf in the dissolution action. Among other things, Wang stated: "[t]here will be no need to file a motion. . . . [I] will provide your firm the form regarding substitution of attorney today or tomorrow by email. I do not have an attorney and will retain a consulting attorney. [¶] . . . [¶] FYI, after not receiving any replies from Lawrence, I sent an email on 12/15/2014 and took up Eva Martelle's offer for her to draft a travel stipulation."

On December 23, Wang and Nesse both signed the substitution of attorney form, indicating that Wang would be proceeding in propria persona. The parties subsequently amended the form and filed it with the court on December 30.

### B. Procedural background

Wang filed the initial complaint in this action on December 21, 2015. Nesse passed away in December 2017, after which Wang filed the operative first amended complaint to substitute in the estate of Paul S. Nesse and Eden S. Nesse as executor of the estate of Paul S. Nesse (respondents).[4]

The first amended complaint alleged three causes of action for breach of contract, professional negligence, and breach of fiduciary duty. Each cause of action alleged that Nesse had failed to competently represent Wang in numerous respects. The first amended complaint also alleged that Nesse's representation commenced on or about November 2013, "and continuously thereafter until on or about December 30, 2014," when Nesse was substituted out as counsel of record in the dissolution action.

Respondents moved for summary judgment in September 2019. They argued that Wang's lawsuit was barred by the one-year statute of limitations in section 340.6 because Wang had discovered, or reasonably should have discovered, the alleged harms she suffered more than one year before she filed suit. Further, they argued that, even under the "continuous representation" tolling provision in section 340.6, subdivision (a)(2), the facts established as a matter of law that Nesse's representation of Wang had ended on December 3, 2014, or on December 17, 2014, at the latest.

Respondents argued the undisputed facts established that Wang "discharged" Nesse and "consented" to Nesse's withdrawal more than one year before the initial complaint was filed, such that there "was simply no ongoing mutual relationship between Wang and [Nesse] nor any activities performed in furtherance of the attorney-client relationship." Specifically, respondents argued that Wang had "discharged" Nesse more

---

[4] Nesse filed a cross-complaint and then a first amended cross-complaint, which the parties stipulated to dismiss after the trial court granted Nesse's motion for summary judgment. The cross-complaints are not at issue in this appeal.

than a year before filing her complaint by "acting in pro per, for example, by unilaterally handling the travel stipulation," "failing to respond to communications with [Nesse] regarding matters related to the case," "deliberately keeping [Nesse] out of the loop on relevant communications," "not objecting to any of Nesse's repeated emails of his intention to withdraw," and "not indicating in any way shape or form that she wanted Nesse to continue to represent her."

Wang opposed the motion, arguing that respondents' evidence showed Nesse had "engaged in representation of and in providing legal assistance to Ms. Wang on and after December 22, 2014," so that the statute of limitations was tolled until December 23 when the substitution of attorney form was signed, and respondents had therefore failed to carry their burden in support of their motion. Wang also argued that she discovered some of the alleged harm less than a year before she filed her lawsuit, so that her complaint was timely, regardless of when Nesse ceased representing her.[5]

The trial court granted the motion. It held first that section 340.6 applied to each cause of action in the first amended complaint because "the merits of the claim will necessarily depend upon proof that an attorney violated a professional obligation—that is, an obligation the attorney has *by virtue* of being an attorney—in the course of providing professional services." In addition, it held that the one-year limitations period in section 340.6 "is triggered when the client discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission and suffers actual injury."

The trial court then held that respondents' evidence established Nesse "expressly withdrew from representing" Wang in the dissolution action. Specifically, the court

---

[5] Because Wang does not argue on appeal that she discovered any of the alleged harms less than a year before she filed suit, we omit a detailed statement of facts related thereto.

8

determined that when Nesse informed Wang and the other counsel on December 15, 2014, that he "will be withdrawing as Ms. Wang's attorney," and later that day sent Wang a substitution of attorney form, Wang "could not have reasonably believed that Mr. Nesse would provide further legal services in the marital dissolution action." According to the trial court, that "ended the legal representation regardless of the fact that certain formalities (such as the signing and filing of the substitution of attorney form) did not occur until later in December 2014," and respondents therefore had carried their initial burden on summary judgment.

The trial court then held that Wang had failed to raise any triable issues of material fact as to when Nesse's representation ended. Instead, her proffered evidence consisted only of her own opinion, and that of an attorney purporting to be an expert witness who opined that Nesse continued to represent Wang beyond December 21, 2014. The court held that such opinion is legally irrelevant and that evidentiary facts must support the assertion.

Wang moved for a new trial in January 2020, which the trial court denied.

In October 2020, the parties stipulated to dismissal of respondents' cross-complaint without prejudice.

Wang filed her notice of appeal on December 3, 2020.[6]

## II. DISCUSSION

The issue on appeal is whether the evidence establishes as a matter of law that Nesse no longer represented Wang on December 21, 2014, so that Wang's lawsuit is barred by the statute of limitations in section 340.6. As explained below, we conclude

---

[6] Judgment was subsequently entered on January 25, 2021. On our own motion, we deemed Wang's appeal filed as of January 28, 2021. (Cal. Rules of Court, rule 8.104(d).)

9

respondents failed to carry their initial burden in that regard and the evidence shows there is a triable issue of fact regarding when Nesse's representation ended.

### A. Standard of review

We review the record de novo to determine whether a defendant has " ' "conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.)

The moving defendant "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  Where the complaint pleads facts to contravene an anticipated affirmative defense, such as the statute of limitations, it creates " 'a material issue which defendant[] would have . . . to refute in order to obtain summary [judgment].' " (*Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858, quoting *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1739-1740.)  The moving defendant then has the burden of establishing the complete defense to the cause of action. (*Bacon*, *supra*, at p. 858; § 437c, subd. (*o*)(2).)

Upon a defendant's prima facie showing of the nonexistence of an element of the cause of action, or the existence of a complete defense to the cause of action, the plaintiff "is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850; § 437c, subd. (p)(2).)

A reviewing court independently examines " '(1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to "decide whether the opposing party has demonstrated the existence of a triable, material fact issue." ' " (*Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 323.)  " ' "We liberally construe the evidence in support of the party opposing

10

summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) "In ruling on the motion, the court must draw all reasonable inferences from the evidence in the light most favorable to the opposing party." (*Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, 600, citing *Aguilar*, *supra*, 25 Cal.4th at p. 843.)

### B. There is a triable issue of material fact as to whether Nesse continued to represent Wang on December 21, 2014

#### 1. Section 340.6 applies to Wang's causes of action

The determination of whether a particular statute of limitations applies to a cause of action is a question of law that we review de novo. (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164.)

Section 340.6 provides in part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6, subd. (a).)

All three causes of action in Wang's first amended complaint alleged wrongful acts or omissions by Nesse, other than fraud, which arose in the performance of professional services. In such circumstances, section 340.6 applies. (*Nguyen v. Ford* (2020) 49 Cal.App.5th 1, 11 (*Nguyen*); *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194 [plain language of statute applies to all actions, except fraud, brought against an attorney for wrongful act or omission arising in the performance of professional services].)

#### 2. "Continuing representation" tolling provision

As exceptions to the one-year and four-year statutes of limitations, section 340.6 also provides various tolling provisions, including where "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful

11

act or omission occurred."[7] (§ 340.6, subd. (a)(2).) This particular provision "is rooted in two considerations: it prevents the attorney from defeating a malpractice action by continuing to represent the client until the statute of limitations has run; and it avoids forcing the client to file a lawsuit that would disrupt the ongoing attorney-client relationship, which would prevent the negligent attorney from attempting to correct or minimize the error." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 116.)

Section 340.6 "does not provide a standard for determining when an attorney's representation in a 'specific subject matter' terminates, thus ending the tolling period." (*Nguyen*, *supra*, 49 Cal.App.5th at p. 12, quoting *Gonzalez v. Kalu* (2006) 140 Cal.App.4th 21, 28 (*Gonzalez*).) Accordingly, courts "have developed a number of principles to direct the inquiry . . . [which] emphasize the particular details of the attorney's and client's interactions rather than bright-line rules." (*Nguyen*, *supra*, at p. 12.)

Ordinarily, an attorney's representation ends " ' "when the client discharges the attorney or consents to a withdrawal, the court consents to the attorney's withdrawal, or upon completion of the tasks for which the client retained the attorney." ' " (*Nguyen*, *supra*, 49 Cal.App.5th at p. 13, quoting *GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1246 (*GoTek Energy*); *Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 927 (*Laclette*).)

However, an attorney may withdraw from representation within the meaning of the statute, "even absent a client's consent." (*Nguyen*, *supra*, 49 Cal.App.5th at p. 13.) Such withdrawal "does not depend on whether the attorney has formally withdrawn from representation, such as by securing a court order granting permission to withdraw."

---

[7] Wang affirmatively pleaded in her first amended complaint that Nesse continued to represent her "until on or about December 30, 2014," when Nesse was substituted out as counsel of record in the dissolution action.

12

(*Ibid*.) " ' "[I]n the event of an attorney's unilateral withdrawal or abandonment of the client, the representation ends when the client actually has or reasonably should have no expectation that the attorney will provide further legal services. [Citations.] That may occur upon the attorney's express notification to the client that the attorney will perform no further services." ' " (*Ibid*., quoting *GoTek Energy*, *supra*, 3 Cal.App.5th at p. 1247.)

"[T]he inquiry into when representation has terminated does not focus on the client's subjective beliefs about whether the attorney continues to represent him or her in the matter. Instead, the test is objective and focuses on the client's reasonable expectations in light of the particular facts of the attorney-client relationship." (*Nguyen*, *supra*, 49 Cal.App.5th at p. 14; *Worthington v*. *Rusconi* (1994) 29 Cal.App.4th 1488, 1498 (*Worthington*).)

In determining whether an attorney continues to represent a client, " 'we objectively examine " 'evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship.' " ' " (*Nguyen*, *supra*, 49 Cal.App.5th at p. 14, quoting *Shaoxing City Maolong Wuzhong Down Products*, *Ltd*. *v*. *Keehn & Associates*, *APC* (2015) 238 Cal.App.4th 1031, 1038 (*Shaoxing*).) Representation ends " ' "when the client actually has or reasonably should have no expectation that the attorney will provide further legal services." ' " (*Flake v*. *Neumiller & Beardslee* (2017) 9 Cal.App.5th 223, 231, italics omitted (*Flake*).)

### 3. *Respondents failed to carry their burden*

Applying these standards and exercising our independent review while viewing the evidence in the light most favorable to Wang, we determine that respondents failed to carry their burden of establishing that Nesse's representation of Wang ended before December 21, 2014, as a matter of law. In our view, the evidence creates a triable issue of material fact as to whether Wang had discharged Nesse or consented to his withdrawal, and whether Wang could have had a reasonable expectation that Nesse

13

would continue to provide further legal services as of that date. (*GoTek Energy*, *supra*, 3 Cal.App.5th at p. 1246; *Gonzalez*, *supra*, 140 Cal.App.4th at pp. 30-31.)

First, the facts do not establish that Nesse withdrew from representing Wang prior to December 21, 2014, as a matter of law. Although it is conceivable that a trier of fact could determine that Nesse's e-mails to Wang between December 3 and 15, 2014, constituted withdrawal, another reasonable inference is that Nesse requested his client's response, threatened to withdraw, and indicated his future intention to withdraw.

On December 3, for instance, Nesse stated, "I must call upon you once again to contact me, and, if not, then I will have no other choice but to withdraw as your counsel. . . . [¶] . . . [¶] Please contact me forthwith." On December 10, Stratico e-mailed Wang about the ex parte application that had been served, and stated, "[w]e must hear from you, as we need to file a response within 24 hours. [¶] It is **imperative** that you contact our office **immediately**." Later on December 10, Stratico e-mailed again, attaching a substitution of attorney form but also stating, "[Nesse] will not be responding to the ex-parte served on our office this afternoon unless he is paid in full. Therefore, please either contact me to make payment arrangements or sign the attached Substitution of Attorney and return [it] to our office *immediately*."

On December 12, Stratico e-mailed Wang, informing her that Nesse "does not plan on attending the hearing." On December 15, Nesse e-mailed Amini and Martelle, with a copy to Wang, stating: "I will be withdrawing as Ms. Wang's attorney. Unless I receive a substitution of attorney forthwith, a Request for Order/Motion will be filed. As such, I will not be appearing at the hearing on December 18, 2014." Also on December 15, Nesse e-mailed Wang, stating: "Once again, please sign the Substitution of Attorney and return to me immediately. If not, I will be required to file a Request for Order or Motion wherein I must state the reason for the request for withdrawal. I would rather handle this between you and I than to have the other two attorneys involved. [¶] I look forward to hearing from you, but so far you have been non-responsive."

14

A reasonable trier of fact could conclude that the correspondence from Nesse was equivocal about whether he had withdrawn. The language in the e-mails is conditional—for example, he would not be responding to the ex parte *unless* he was paid in full, and he did not *plan* on attending the hearing. The language is also prospective: "I *will be* withdrawing." We must draw all reasonable inferences in the light most favorable to the party opposing the motion. (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)

Nesse also signed the travel stipulation on December 17, 2014, as "[a]ttorney for [p]etitioner [Wang]." The stipulation stated that Wang and Lawrence agreed to the terms, "together with their respective attorneys." Nesse claimed, as respondents do on appeal, that he signed it solely as an "accommodation" and a "courtesy," and that he did not provide any legal services by signing it. However, while a trier of fact could make that determination, it could also determine that the stipulation shows Nesse had not withdrawn his representation at that point, but instead still considered himself "attorney for petitioner." And, as summarized above, the test is objective from the client's perspective. The trier of fact assesses whether a client in Wang's position could reasonably believe, based on Nesse's signing the stipulation as her attorney, that he continued to represent her, and whether that act constitutes evidence of an ongoing mutual relationship. (*Nguyen*, *supra*, 49 Cal.App.5th at p. 14.)

Although an attorney-client relationship " ' "may be ended unilaterally if the lawyer's communication is such that the client understood or reasonably should have understood that no further services would be rendered," ' " the facts here do not establish that as a matter of law. (*Laclette*, *supra*, 184 Cal.App.4th at p. 927, fn. 3.) Accordingly, we cannot conclude that Nesse had withdrawn or that Wang "consented" to any such withdrawal.

Nor do the facts establish as a matter of law that Wang "discharged" Nesse. Respondents claimed Wang effectively terminated Nesse's representation by "acting in pro per." The evidence shows that Wang agreed to the stipulation for the minor children

15

to travel and selected a mediator, without assistance from Nesse.  Yet even if those acts could give rise to an inference that Wang effectively had discharged Nesse or consented to his withdrawal, they could also give rise to other reasonable inferences, including, for instance, that she simply sought to limit legal fees where possible.  Other evidence in the record shows that legal fees were a concern for Wang.

Moreover, respondents have not cited any authority that where a client takes certain actions on her own behalf relating to existing litigation in which she is represented, it establishes as a matter of law that she has discharged her attorney or consented to his withdrawal.  Instead, as the authority summarized above demonstrates, the question is whether " ' "the client actually has or reasonably should have no expectation that the attorney will provide further legal services." ' " (*Flake*, *supra*, 9 Cal.App.5th at p. 231, italics omitted.)  We cannot say as a matter of law that agreeing to a stipulation for her children to travel and selecting a mediator without utilizing counsel means a client cannot reasonably expect that her attorney will provide further legal services.

Nor do we believe Wang's failure to respond to Nesse's communications establishes as a matter of law that she had discharged him.  As set forth above, Nesse e-mailed Wang on October 30 and then seven times between December 3 and December 15 without receiving a response.  However, while the evidence could give rise to an inference that her failure to respond constituted terminating the representation, it could also give rise to other reasonable inferences that do not include termination.  As noted above, although the travel stipulation was prepared without Nesse's assistance, it included signature blocks for Wang, and for Nesse as "attorney for" Wang, which they both signed on December 17.  A reasonable trier of fact could determine that constitutes evidence that Wang had not discharged Nesse as of that date.

Respondents also argued that Wang discharged Nesse by "deliberately keeping [him] out of the loop on relevant communications," including saying to Lawrence in her

16

December 9 e-mail that he "[did] not need to cc: my attorney." Similar to the tasks Wang performed on her own, though, this could be construed as evidence that Wang sought to limit legal fees, or it could give rise to other reasonable inferences aside from termination. Wang's use of the phrase "my attorney" could also be construed as evidence that she still considered Nesse to be her attorney and had not discharged him.

Lastly, respondents argued that Wang discharged Nesse by not objecting to his e-mails communicating his intent to withdraw or his requests that she sign the substitution form, and "not indicating that she wanted Nesse to continue to represent her." As noted above, though, Wang's failure to respond to Nesse's e-mails could give rise to a number of reasonable inferences aside from a desire to terminate the representation, including the possibility that her failure to sign the substitution form before December 23 indicated a desire not to terminate. Respondents cite no authority for the proposition that a failure to object to an intent to withdraw, or a failure to affirmatively indicate a desire for continued representation, establishes as a matter of law that the client has discharged her attorney.

The facts here are similar to those in *Worthington*. In that case, the client and attorney finalized a substitution of attorney form in May 1991. (*Worthington*, *supra*, 29 Cal.App.4th at p. 1493.) After the plaintiff brought her malpractice suit on April 2, 1992, the attorney moved for summary judgment on the ground that his representation had actually ended in March 1991, when the plaintiff consulted new counsel whom she eventually hired. (*Ibid*.) The trial court granted the motion but the Court of Appeal reversed. It noted that the evidence included a letter from the attorney to the client on April 5, 1991—less than a year before the client filed suit—which included suggestions for how to proceed in the underlying probate action. (*Ibid*.) As the court explained, the letter was "evidence of the ongoing nature of her attorney-client relationship." (*Id*. at p. 1498.) While the court cautioned that "not every contact between an attorney and his or her client will amount to representation" (*ibid*.), it determined that the letter was

17

sufficient to create "a triable issue of material fact regarding the date on which defendant's representation of plaintiff ended," so that summary judgment was improper. (*Id*. at p. 1491.)

The same is true here, where Nesse's execution of the stipulation on Wang's behalf on December 17, and the absence of any subsequent actions on his part to withdraw as counsel before December 23, at the very least create a triable issue of material fact as to the date on which his representation of Wang ended.

*Laclette* is also instructive. (*Laclette*, *supra*, 184 Cal.App.4th 919.) In that case, Galindo represented Laclette in a breach of contract action that settled in January 2005. (*Id*. at p. 922.) Pursuant to a settlement agreement, Laclette continued to make monthly payments to the other party into 2008. (*Id*. at pp. 922-923.) In February 2007, Laclette filed a malpractice action against Galindo. (*Ibid*.) The trial court granted Galindo's motion for summary judgment, holding that there was no continuing representation because the parties had not had any contact since the underlying matter settled in 2005, so that the lawsuit was barred by the one-year statute of limitations in section 340.6. (*Laclette*, *supra*, at pp. 924-925.)

The Court of Appeal reversed. It began by noting that, "[a]s a preliminary matter, this is not a case in which the client consented to termination or in which the trial court granted an application by counsel for withdrawal." (*Laclette*, *supra*, 184 Cal.App.4th at p. 928.) It then held that, "[i]rrespective of the lack of contact between Galindo and Laclette during said two-year period, the evidence established the following: the trial court retained jurisdiction over the [settlement]; the settlement obligated Laclette to pay . . . $3,500 per month; Laclette was paying the installments as agreed; and Galindo remained Laclette's counsel of record." (*Id*. at p. 929.) Accordingly, the court could not say "as a matter of law that Laclette could not reasonably expect Galindo to represent her in the event of issues arising concerning the performance of the settlement." (*Ibid*.)

18

Similarly here, this is not a case where Wang consented to termination or the trial court granted an application for withdrawal more than one year before Wang filed her lawsuit. In addition, the evidence—including Nesse's execution of the stipulation on December 17 and his failure to have submitted a request for withdrawal to the court—precludes us from concluding as a matter of law that Wang could not have reasonably expected that Nesse continued to represent her as of December 21, 2014.

On appeal, respondents analogize to just one case—*Shaoxing*—which we find inapposite. In that case, the plaintiff contended that the lawsuit was timely because the attorney's representation had continued *after* the attorney had formally been substituted out. (*Shaoxing*, *supra*, 238 Cal.App.4th 1031.) The only evidence supporting that claim was a statement made by an attorney in the outgoing firm that they would " 'oversee the transition' " to new counsel and " 'assist' " him " 'with his work on the case.' " (*Id.* at p. 1039.) Despite that statement, the court held that "the isolated statement of one of [the] attorneys following [the] withdrawal and substitution is insufficient as a matter of law to constitute continued representation." (*Ibid.*) It noted that there was no evidence, after formal substitution, that the former attorneys provided any legal advice or performed any work for the former client, sent any bills related to ongoing representation, appeared for or negotiated on their behalf, or even spoke or communicated with them regarding the subject matter. (*Ibid.*)

We are not confronted with those facts here, where the substitution of attorney form was signed and filed less than a year before Wang filed suit. Accordingly, we do not need to consider whether actions *after* the formal substitution constitute sufficient evidence of continuing representation.[8]

---

[8] For this reason, respondents' emphasis on the fact that Nesse did not bill Wang for signing the stipulation on December 17, or for any work after December 3, does not establish as a matter of law that he did not continue to represent Wang during that time period. In *Shaoxing*, whether the attorney had submitted bills for legal services rendered (continued)

19

In sum, drawing all reasonable inferences in the light most favorable to Wang, we conclude respondents did not carry their burden of establishing as a matter of law that Nesse no longer represented Wang as of December 21, 2014. (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)

We do not determine that Nesse continued to represent Wang as of December 21, 2014, nor do we make any determination as to when Nesse's representation of Wang ended—those determinations are for the trier of fact. Instead, we determine only that there is a triable issue of fact as to whether the representation ended early enough for Wang's complaint to be time-barred.

### III.    DISPOSITION

The judgment is reversed. Wang shall recover her costs on appeal.

---

was merely one factor it considered in determining whether the attorney continued to represent the client after formally substituting out. (*Shaoxing*, *supra*, 238 Cal.App.4th at p. 1039.) The case does not stand for the proposition that, prior to formally substituting out, the failure to submit bills establishes that the attorney did not represent the client, regardless of other evidence in the record.

_____
                Wilson, J.

WE CONCUR:

_____
        Bamattre-Manoukian, Acting P.J.

_____
           Danner, J.

Wang v. Nesse et al.
H048669

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 15-CV-289298 |
|---|---|
| Trial Judge: | Hon. Mark H. Pierce |
| Counsel for Plaintiff/Appellant:<br><br>Dana X. Wang | Joseph A. Hearst<br><br>Robert M. Vantress<br>Vantress Law Group |
| Counsel for Defendant/Respondent:<br><br>Eden S. Nesse as executor of the<br>Estate of Paul S. Nesse<br>Paul S. Nesse, Inc., formerly known<br>as Paul S. Nesse APC | John P. Girarde<br>Stephanie Yee<br>Murphy, Pearson, Bradley & Feeney<br><br>Jerry R. Hauser<br>Miller-Hauser Law Group |

Wang v. Nesse et al.
H048669